# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ ) | |
| GOOGLE INC., ) | |
| ) | Case No. 1:15-mc-00150-P1 |
| Petitioner, ) | |
| v. ) | **ECF CASE** |
| ) | |
| TWENTY-FIRST CENTURY FOX, INC., ) | CASE IN OTHER COURT: |
| NBCUNIVERSAL MEDIA, INC., and ) | No. 3:14-cv-00981-HTW-LRA |
| VIACOM, INC., ) | (S.D. Miss.) |
| Respondents. ) | |
| _____ ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO GOOGLE INC.'S
## RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Scott B. Wilkens (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Phone: (202) 639-6072
Fax: (202) 639-6066
Email: swilkens@jenner.com

*Attorney for Respondents Twenty-First
Century Fox, Inc., NBCUniversal Media,
Inc., and Viacom Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

    A.  Government Investigations into Google's Unlawful Business Practices ...........................2

    B.  AG Hood's Civil Investigative Demand.....................................................................4

    C.  Google's Federal Lawsuit Against AG Hood......................................................4

    D.  Google's Premature Subpoenas to the Non-Parties .........................................5

    E.  The Subpoenaed Parties' Timely Objections to the Subpoenas ........................................6

    F.  Google's Failure to Meet and Confer Meaningfully.........................................7

    G.  The Subpoenaed Parties' Production of All Non-Privileged, Arguably Relevant Documents .........................................................................................................10

ARGUMENT .............................................................................................................10

I.  Google's Subpoenas Improperly Seek Documents that Google Could Have Obtained from a Party to the Underlying Litigation. .........................................................................11

II.  The Subpoenaed Parties Have Produced The Only Arguably Relevant Documents in their Possession. ..........................................................................................................13

    A.  None of the Requested Documents Is Relevant....................................................13

    B.  The Subpoenaed Parties Have Produced All Arguably Relevant Documents.................16

    C.  The Remaining Documents are Irrelevant to AG Hood's State of Mind. ........................16

    D.  Many of The Remaining Documents Sought By Google Are Outside the Scope of the Subpoenas. .....................................................................................................20

III.  Even if the Additional Subpoenaed Documents Were Relevant – And They Are Not – The Burdens Associated with Searching For, Reviewing, and Producing Them Would Far Outweigh Any Benefit. ..................................................................................................21

IV.  Google's Privilege Arguments are Irrelevant at this Juncture. ...............................................23

CONCLUSION ...........................................................................................................25

## TABLE OF AUTHORITIES

CASES

*AFSCME v. Scott*, 277 F.R.D. 474 (S.D. Fla. 2011) ....................................................19

*Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW), 2011 WL 781198
    (S.D.N.Y. Mar. 4, 2011) ........................................................................................22

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ................................................................16

*Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. M8-85, 1994 WL
    9666 (S.D.N.Y. Jan. 12, 1994) ..............................................................................13

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980) ...........23

*BSN Medical, Inc. v. Parker Medical Associates, LLC*, No. 10 Misc. 15, 2011 WL
    197217 (S.D.N.Y. Jan. 19, 2011)...........................................................................22

*Burlodge Ltd. v. Standex International Corp.(In re Motion To Compel Compliance with
    Subpoena Direct To Department of Veterans Affairs)*, 257 F.R.D. 12 (D.D.C. 2009)............13

*Chevron Corp. v. Donziger*, No. 13-MC-80038 CRB (NC), 2013 WL 1402727 (N.D. Cal.
    Apr. 5, 2013) .........................................................................................................24

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996)...................22

*Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004).....................................................20

*Crosby v. City of New York*, 269 F.R.D. 267 (S.D.N.Y. 2010) ....................................14

*Dukes v. Wal-Mart Stores, Inc.*, No. 01-CV-2252, 2013 WL 1282892 (N.D. Cal. Mar. 26,
    2013) ....................................................................................................................12

*Food Lion, Inc. v. United Food & Commercial Workers International Union*, 103 F.3d
    1007 (D.C. Cir. 1997) ...........................................................................................20

*Grand River Enterprises Six Nations, Ltd. v. King*, No. 02 CIV 5068 (JFK), 2009 WL
    63461 (S.D.N.Y. Jan. 12, 2009)............................................................................25

*International Society for Krishna Consciousness, Inc. v. Lee*, No. 75 Civ. 5388 (MJL),
    1985 WL 315 (S.D.N.Y. Feb. 28, 1985)................................................................24

*Jack Frost Laboratories, Inc. v. Physicians & Nurses Manufacturing Corp.*, No. 92 CIV
    9264 (MGC), 1994 WL 9690 (S.D.N.Y. Jan. 13, 1994)........................................22

*Massey v Anand*, No. 05-10671, 2012 N.Y. Misc. LEXIS 2945 (N.Y. Sup. Ct., Suffolk
    Cnty., May 10, 2012) .............................................................................................12

*Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419 (S.D.N.Y. 1998) ...............................22

*North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005) .................................19

*O'Connor v Lewis*, No. 11-13553, 2013 N.Y. Misc. LEXIS 3318 (N.Y. Sup. Ct., Suffolk Cnty., July 19, 2013).............................................................................................12

*Olesen v. Morgan*, No. 1:06-CV-959, 2009 WL 2045682 (N.D.N.Y. July 8, 2009) ...................16

*In re Parmalat Securities Litigation*, No. 04 MD 1653 (LAK)(HBP), 2006 WL 3592936 (S.D.N.Y. Dec. 1, 2006)....................................................................................12

*In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453 (S.D.N.Y. 1973)....................13

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) ..............................................................14

*Sackman v. Liggett Group, Inc.*, 173 F.R.D. 358 (E.D.N.Y. 1997)................................................12

*Smith v. Armour Pharmaceutical Co.*, 838 F. Supp. 1573 (S.D. Fla. 1993)................................12

*Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4 (D.D.C. 2004)...................................................20

*United States v. Philip Morris, Inc.*, 347 F.3d 951 (D.C. Cir. 2003)............................................25

## STATUTES

Miss. Code Ann. § 75-24-5(1) ............................................................................................................5

Miss. Code Ann. § 75-24-5(2)(e)........................................................................................................5

Miss. Code Ann. § 75-24-5(2)(g)........................................................................................................5

Miss. Code Ann. § 75-24-27(1)(a)......................................................................................................5

## OTHER AUTHORITIES

*comScore Releases August 2014 U.S. Search Engine Rankings*, comScore (Sept. 17, 2014), *available at* http://www.comscore.com/Insights/Market-Rankings/comScore-Releases-August-2014-US-Search-Engine-Rankings................................................1

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................................12

Fed. R. Civ. P. 45(d)(1)......................................................................................................................12

Fed. R. Civ. P. 45(d)(2)(B) .................................................................................................................7

Fed. R. Civ. P. 45(d)(3)(A)(iv) ....................................................................................................12, 22

Google Transparency Report:  Request to Remove Content, *available at* http://www.google.com/transparencyreport/removals/copyright/?hl=en (last visited June 14, 2015)..................................................................................................................2

National Press Release, FBI, *Update on Sony Investigation* (Dec. 14, 2014), https://www.fbi.gov/news/pressrel/press-releases/update-on-sony-investigation ..................11

Press Release, Office of Attorney General Bob Ferguson, *Google To Pay Washington State $610,600 To Settle Consumer Tracking Allegations* (Nov. 18, 2013), http://www.atg.wa.gov/news/news-releases/google-pay-washington-state-610600-settle-consumer-tracking-allegations ...............................................................4

Press Release, Office of Attorney General Eric T. Schneiderman, *A.G. Schneiderman Announces $17 Million Multistate Settlement With Google Over Tracking Of Consumers* (Nov. 18, 2013), http://www.ag.ny.gov/press-release/ag-schneiderman-announces-17-million-multistate-settlement-google-over-tracking ...........................................4

Press Release, U.S. Dep't of Justice, *Google Forfeits $500 Million Generated by Online Ads & Prescription Drug Sales by Canadian Online Pharmacies* (Aug. 24, 2011), *available at* http://www.justice.gov/opa/pr/google-forfeits-500-million-generated-online-ads-prescription-drug-sales-canadian-online..................................................4

David Streitfeld, *Google Concedes That Drive-By Prying Violated Privacy*, N.Y. Times, Mar. 12, 2013, http://www.nytimes.com/2013/03/13/technology/google-pays-fine-over-street-view-privacy-breach.html.........................................................4

Respondents Twenty-First Century Fox, Inc., NBCUniversal Media, Inc., and Viacom Inc. (collectively "the Subpoenaed Parties") respectfully oppose the Rule 45 Motion to Compel Compliance with Subpoena brought by Petitioner Google Inc. ("Google").

## INTRODUCTION

The Subpoenaed Parties are well-known media companies in the business of creating and distributing motion pictures and television shows.  In order to protect their investments in their creative content, the Subpoenaed Parties engage in a wide range of measures to curb rampant online piracy, including, among other things, issuing takedown notices to remove infringing material, initiating civil litigation around the world to enforce copyrights and obtain injunctive relief, working cooperatively and in good faith with Internet service providers, advertisers, payment processors and others to make piracy less attractive, and petitioning government officials, including law enforcement agencies, to investigate and bring civil and criminal enforcement actions related to conduct that affects their copyrighted works.

Google's search engine is the most popular and widely-used method to find and gain access to content on the Internet,[1] including pirated content and a wide range of other content that Google concedes is "objectionable" – *i.e.* illegal – including content concerning human trafficking, illegal drugs, and fraudulent government identification documents such as passports.[2] With respect to piracy, the Subpoenaed Parties and other content owners send Google millions of takedown requests each month asking Google to remove links to infringing content from its

---

[1] *comScore Releases August 2014 U.S. Search Engine Rankings*, comScore (Sept. 17, 2014), *available at* http://www.comscore.com/Insights/Market-Rankings/comScore-Releases-August-2014-US-Search-Engine-Rankings (showing that in August 2014, Google had a 67.3 percent search engine market share in the United States).

[2] MS Dkt. 3 at 3 (Google's Mem. of Law in Support of Preliminary Injunction) ("Google agrees that much of the third-party content about which the Attorney General complains is objectionable.").  All citations to "MS Dkt." refer to the docket in *Google Inc. v. Hood*, No. 3:14-cv-00981-HTW-LRA (S.D. Miss. filed Dec. 19, 2014).

search engine.[3]  The Subpoenaed Parties also have exercised their rights to petition government officials regarding Google's role in facilitating and profiting from the piracy of their content.

While Google paints itself as the victim of these efforts, the opposite is true.  Through its unnecessary and overbroad third-party subpoenas (the "Subpoenas"), and now its Motion to Compel, Google has acted as the aggressor, seeking to embroil the Subpoenaed Parties in its lawsuit against Mississippi Attorney General Jim Hood ("AG Hood"), and to chill the Subpoenaed Parties' efforts to seek the assistance of law enforcement officials.  Although Google asserts that the Subpoenaed Parties are "special interests" that have "spent years pursuing an anti-Google agenda," including through their communications with "AG Hood,"[4] there is nothing illicit or inappropriate about the Subpoenaed Parties' efforts; to the contrary, those efforts are protected First Amendment activity.

Nonetheless, Google seeks to deter and punish the Subpoenaed Parties' protected activity by dragging them into its litigation with AG Hood and imposing burdensome discovery costs. To that end, Google has issued overbroad Subpoenas to each of the Subpoenaed Parties, demanding documents that are irrelevant to the underlying litigation, which by Google's own admission primarily concerns questions of law such as whether AG Hood's investigation of Google is preempted by various federal statutes.  Indeed, in the underlying litigation, Google and AG Hood have "agreed upon the relevant facts" and "viewed this matter primarily as a dispute of law,"[5] and Google has told the district court that "there isn't really a fight on the facts here."[6] Furthermore, the district court noted that although "Google constantly has stated in its papers

---

[3]   Google    Transparency    Report:    Request    to    Remove    Content,    *available    at* http://www.google.com/transparencyreport/removals/copyright/?hl=en (last visited June 15, 2015) (showing that Google received over 37 million copyright removal requests for Google search in the last month).

[4] Google Memorandum of Law ("MOL") at 1.

[5] Declaration of Michael H. Rubin in Support of Google Inc.'s Rule 45 Motion to Compel Compliance with Subpoena ("Rubin Decl.") Ex. 52, at 6.

[6] MS Dkt. 83 at 11 (preliminary injunction hearing transcript).

that [AG Hood's investigation] seems to have been pushed by the Hollywood industry," the court couldn't "think of why it would be germane to a ruling by the court."[7]

In addition to seeking irrelevant documents, the Subpoenas seek documents that Google could have obtained directly from AG Hood, as well as internal, sensitive Subpoenaed Party documents with no possible bearing on the underlying litigation.   And even if the requested documents were relevant – which they are not – Google's overbroad requests would impose an undue burden on each of the Subpoenaed Parties, who would have to search for and review an enormous number of documents to find the illusory needle in the haystack.

But Google's Motion to Compel is not merely meritless; it also is misleading.   Google filed the Motion on June 1, 2015.   Yet Google failed to inform this Court that the Subpoenaed Parties had already promised to produce a substantial portion of the requested (but irrelevant) documents *the very next day*.   The Subpoenaed Parties did so, mooting a significant portion of Google's claims.   Similarly, Google's Motion asks this Court to resolve a host of privilege issues that are premature in light of the Subpoenaed Parties' objections based on relevance, overbreadth, and undue burden.   These facts make clear that Google's Subpoenas reflect nothing more than an attempt to burden the Subpoenaed Parties, deter them from constitutionally protected activities, and waste judicial resources.   This Court should not countenance those efforts and should instead deny the Motion to Compel in its entirety.

## BACKGROUND

### A.      Government Investigations into Google's Unlawful Business Practices

Google's business practices have already led to significant state, federal, and international regulatory scrutiny and enforcement actions against Google for facilitating a wide

---

[7] *Id.* at 73.

range of unlawful conduct. Most notably, in 2012, Google entered into a non-prosecution agreement ("NPA") with the U.S. Department of Justice, in which Google admitted that it had used its online advertising services to assist illegal Canadian online pharmacy sales into the United States.[8] Google did not merely display third parties' websites; rather, Google employees – with Google's top management's knowledge and approval – actively assisted criminals in targeting American consumers with unlawful pharmaceuticals.[9] To avoid criminal prosecution, Google agreed to pay $500 million in penalties. Similarly, in 2013, Google paid a combined $24 million to settle two separate investigations by thirty-seven states and the District of Columbia into violations of consumer protection and privacy laws.[10]

These settlements raised concerns that Google was engaging in similar conduct regarding other types of unlawful activities that occur through its services, including sales of street drugs, human trafficking, fake passports and other forms of identification, and rampant piracy of intellectual property. Since 2012, the attorneys general of a number of states, including AG Hood of Mississippi, have sought to engage with Google related to its facilitation of a broad range of illegal conduct.[11] Rather than take decisive action to address these serious concerns,

---

[8] *See* Press Release, U.S. Dep't of Justice, *Google Forfeits $500 Million Generated by Online Ads & Prescription Drug Sales by Canadian Online Pharmacies* (Aug. 24, 2011), http://www.justice.gov/opa/pr/google-forfeits-500-million-generated-online-ads-prescription-drug-sales-canadian-online; *see also* Non-Prosecution Agreement at 7, *available at* http://www.justice.gov/usao/ri/news/2011/august2011/Google%20Agreement.pdf (Aug. 19, 2010) .

[9] *Id.* at 4, 5, 7.

[10] *See, e.g.*, Press Release, Office of Attorney General Eric T. Schneiderman, Press Release, *A.G. Schneiderman Announces $17 Million Multistate Settlement With Google Over Tracking Of Consumers* (Nov. 18, 2003), http://www.ag.ny.gov/press-release/ag-schneiderman-announces-17-million-multistate-settlement-google-over-tracking; Press Release, Office of Attorney General Bob Ferguson, Press Release, *Google To Pay Washington State $610,600 To Settle Consumer Tracking Allegations* (Nov. 17, 2003), http://www.atg.wa.gov/pressrelease.aspx?id=31508#.Us3bb9JDuFU; David Streitfeld, *Google Concedes That Drive-By Prying Violated Privacy*, N.Y. Times, Mar. 12, 2013, http://www.nytimes.com/2013/03/13/technology/google-pays-fine-over-street-view-privacy-breach.html.

[11] *See, e.g.*, MS Dkt. 33-4, 33-6, 33-7, 33-8, 33-9.

Google prevaricated and in the end did little to nothing, denying that it played any active role in facilitating unlawful conduct.[12]

### B.    AG Hood's Civil Investigative Demand

In the face of Google's repeated stonewalling, and the ongoing serious harms Google's services facilitate, AG Hood served Google with a civil investigative demand on October 27, 2014 (the "CID"), seeking to investigate Google's role in a range of unlawful activity and the representations that Google makes to consumers.  The CID made clear that AG Hood possessed "information providing reasonable grounds to believe that Google Inc. may have violated one or more of the provisions of . . . the Mississippi Consumer Protection Act" and that he had "reasonable grounds to believe that Google Inc. has used trade practices that are unfair, deceptive, and misleading[.]" MS Dkt. 31-1 at 1–2.[13]  Of course, as noted above, Google has already been subject to state subpoenas and investigations that led to Google admitting wrongdoing and entering into settlements.[14]

### C.    Google's Federal Lawsuit Against AG Hood

In this case, however, Google's response was very different – Google chose to sue the investigator for doing his job.  On December 19, 2015, Google sought to enjoin AG Hood's investigation before it could even get underway by filing suit in federal district court in the Southern District of Mississippi (the "Mississippi Court"), alleging violations of its federal constitutional and statutory rights.  MS Dkt. 1.  Google moved for a temporary restraining order

---

[12] *See, e.g.*, MS Dkt. 33, 33-9 at 1–3, 9–19 (noting Google's failure to respond meaningfully to concerns of state attorneys general including AG Hood).

[13] The Mississippi Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices in or affecting commerce."  Miss. Code Ann. § 75-24-5(1).  It also prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" or "[r]epresenting that goods or services are of a particular standard, quality, or grade."  *Id.* § 75-24-5(2)(e), (g).  Section 75-24-27(1)(a) of the Mississippi Code specifically authorizes the AG to issue subpoenas to investigate potential violations of the MCPA.

[14] *See supra* nn.8–10 and accompanying text.

and a preliminary injunction, which the Mississippi Court granted on March 2, 2015.  Rubin

Decl. Ex. 52.  The Mississippi Court made clear it was "not forecasting any ultimate ruling on

the merits."  *Id.*, Ex. 52 at 3.  In the written opinion that followed on March 27, 2015, the

Mississippi Court observed that "the parties agreed upon the relevant facts," and "viewed this

matter as primarily a dispute of law."  *Id.*, Ex. 53 at 6.  The Mississippi Court granted Google a

preliminary injunction on its immunity claims under the Communications Decency Act, its First

and Fourth Amendment claims under the U.S. Constitution, and its federal statutory preemption

claims.  *Id.*, Ex. 53 at 15–22.  The Mississippi Court "reiterate[d] that this grant of Google's

motion here does not indicate the court will ultimately rule on the merits of the case."  *Id.*, Ex. 53

at 24.   AG Hood appealed the Mississippi Court's ruling to the United States Court of Appeals

for the Fifth Circuit; that appeal remains pending (a procedural fact that Google's motion papers

omit).  *See Google, Inc. v. Hood*, Case No. 15-60205 (5th Cir.).

       **D.**      **Google's Premature Subpoenas to the Non-Parties**

Google served the Subpoenas on March 13, 2015, before discovery commenced in the

Mississippi case.  Rubin Decl., Exs. 3–5.  That same day, Google served subpoenas on the

Motion Picture Association of America ("MPAA"), of which the Subpoenaed Parties (or their

subsidiaries) are members, on MPAA's outside counsel, Jenner & Block LLP, and on another

non-party, the Digital Citizens Alliance. *Id.*, Exs. 1–2, 6.

Under the schedule set forth in the Mississippi Court's March 2, 2015 order, discovery

was due to commence only after AG Hood filed his answer to Google's complaint, which was

due within fourteen days after the Court issued a detailed ruling on the preliminary injunction.

*Id.*, Ex. 52, at 3-4.  As noted above, the Mississippi Court did not issue that ruling until March

27, 2015, and AG Hood filed his answer on April 10, 2015.   *Id.*, Ex. 53; MS Dkt. 93.

6

Accordingly, under the Mississippi Court's order, discovery commenced on April 10, 2015, nearly a month after Google served the Subpoenas.

The Subpoenas are identical and seek the following documents from each Subpoenaed Party:

- **Request No. 1:** All DOCUMENTS discussing or RELATING TO any monetary or in-kind contributions, payments, donations, gifts or other consideration, given to ATTORNEY GENERAL HOOD by YOU, at YOUR direction or on YOUR behalf.  Rubin Decl. Exs. 3–5.

- **Request No. 2:** All DOCUMENTS discussing or RELATING TO any monetary or in-kind contributions, payments, donations, gifts or other consideration, given to DAGA [the Democratic Attorneys General Association] by YOU, at YOUR direction or on YOUR behalf.  *Id.*

- **Request No. 3:** All COMMUNICATIONS with ATTORNEY GENERAL HOOD, including all DOCUMENTS attached to, enclosed with, or otherwise transmitted with a COMMUNICATION.  *Id.*

- **Request No. 4:** All COMMUNICATIONS with any ATTORNEY GENERAL'S OFFICE that RELATE TO or REFER TO GOOGLE or "Goliath," "Project Goliath," "Keystone," "Project Keystone," "Attorney General Project," or "State Attorney General Project," including all DOCUMENTS attached to, enclosed with, or otherwise transmitted with a COMMUNICATION.  *Id.*

On March 27, 2015, the Subpoenaed Parties objected to the Subpoenas as premature but agreed that it would deem them served on the date when discovery eventually commenced. Rubin Decl., Ex. 12.  Notably, although Fox had asked Google to "advise us promptly if your understanding is contrary in any respect of this approach," and the MPAA made a similar request, Google did not respond.  *Id.*, Exs. 7–8.

### E.    The Subpoenaed Parties' Timely Objections to the Subpoenas

Out of an abundance of caution, the Subpoenaed Parties sent Google written objections on March 27, 2015, satisfying the fourteen-day deadline under Fed. R. Civ. P. 45(d)(2)(B), even if the Subpoenas had not been premature.  Rubin Decl. Ex. 12.   These objections included

7

relevance, overbreadth, and undue burden, among others.  *Id.* at 1–2.  The Subpoenaed Parties

also expressly reserved the right to "amend, clarify, or supplement their responses and objections

to the Subpoenas."  *Id.*, Ex. 12 at 3.  Google did not respond until two weeks later, on April 10,

2015, the day AG Hood answered Google's complaint, and also the day discovery commenced

under the Mississippi Court's March 2, 2015 order.  *Id.*, Ex. 17.  The Subpoenaed Parties deemed

the Subpoenas to have been served on April 10, as they had repeatedly told Google they would.[15]

In their April 24, 2015 supplemental responses and objections to the Subpoenas, the

Subpoenaed Parties raised essentially the same objections as in their March 27, 2015 letter, but

agreed to produce documents responsive to each request, as follows:

- As to **Requests Nos. 1 and 2**, seeking documents relating to contributions the Subpoenaed Parties made to AG Hood and the Democratic Attorneys General Association ("DAGA"), the Subpoenaed Parties agreed to produce non-privileged documents or a schedule sufficient to show any such contributions from January 1, 2012 until Google filed its suit against AG Hood.  Rubin Decl., Ex. 29–31.

- As to **Request No. 3**, seeking communications with AG Hood, the Subpoenaed Parties agreed to produce their non-privileged communications with AG Hood's office during the same period.  The Subpoenaed Parties' agreement to produce is not limited by subject matter, and thus includes any communications with AG Hood's office regarding any contributions covered by Requests Nos. 1 and 2.  *Id.*

- As to **Request No. 4**, seeking communications with any attorney general's office that relate to or refer to certain topics, the Subpoenaed Parties agreed to produce non-privileged communications concerning those topics with AG Hood during the same period.  *Id.*  The Subpoenaed Parties did not agree to produce their communications with other attorneys general offices, unless those communications also included AG Hood.

**F.    Google's Failure to Meet and Confer Meaningfully**

On May 11, 2015, the Subpoenaed Parties and Google met and conferred regarding the

Subpoenaed Parties' objections and responses.  With respect to Requests Nos. 1 and 2, the

---

[15] On April 10, 2015, the Mississippi Court entered a one-line order that appeared to retroactively modify the schedule set forth in the March 2 order, stating that "[d]iscovery commenced for the parties and third parties on March 2, 2015."  Rubin Decl., Ex. 17 (attachment).  The Subpoenaed Parties had no notice of, and were not present at, the hearing resulting in this order, and  Google offered no explanation in forwarding it.  *Id.*, Ex. 17.  In response, the Subpoenaed Parties advised that on or before April 24, they would provide any amended or supplemental objections and identify any responsive, non-privileged documents they intended to produce.  *Id.*, Ex. 21.

Subpoenaed Parties reconfirmed that they would produce documents or a schedule sufficient to show any of their contributions to AG Hood or DAGA.  Google's counsel argued that the Subpoenaed Parties should also produce internal documents referencing any such contributions, but did not explain the potential relevance of those documents to the Mississippi action, and instead said that as to relevance the parties would "agree to disagree."  Wilkens Decl., ¶ 3.

Regarding Request No. 3, the Subpoenaed Parties reconfirmed that they would produce their communications with AG Hood without limitation as to subject matter, which would include any communications regarding contributions to AG Hood or DAGA covered by Requests Nos. 1 and 2.  Google argued that the Subpoenaed Parties should also produce any communications between AG Hood and a third party that were subsequently forwarded to a Subpoenaed Party.  However, Request No. 3 seeks only "communications with Attorney General Hood," and the Subpoenas define "communications," as "interpersonal communications."  Rubin Decl., Exs. 3–5.  Accordingly, the Subpoenaed Parties pointed out that any forwarded communications are beyond the scope of the Subpoenas, and in any event would be unduly burdensome to collect, review, and produce.  Wilkens Decl., ¶ 4.

As to Request No. 4, the Subpoenaed Parties reconfirmed that they would produce their communications with AG Hood, including any communications that included the offices of the attorneys general of other states.  Google asserted that communications with other attorneys general offices *that did not include AG Hood's office* are of "core" relevance to the Mississippi action, but did not substantiate that claim, and instead said (once again) that as to relevance the parties would "agree to disagree."  *Id.* ¶ 5.  The Subpoenaed Parties made clear that if Google could not explain the relevance of these documents, they would not agree to engage in the undue burden of searching for, reviewing, and producing the communications.  *Id.*

During the meet and confer, the Subpoenaed Parties also raised the issue of a protective order, and Google's counsel expressed a willingness to consider the issue further.  *Id.* ¶ 7.

On May 22, the Subpoenaed Parties wrote to Google to follow up on several issues. Rubin Decl. Ex. 39.  Google replied on May 27, claiming the parties were at an "impasse," and stating that unless the Subpoenaed Parties agreed *within 24 hours* to withdraw all objections and produce all requested documents, Google would move to compel.  *Id.* ¶ 16 & Ex. 43.

The Subpoenaed Parties responded the next day, explaining that the parties were not at an impasse and that the Subpoenaed Parties wanted to continue to meet and confer.  Rubin Decl. ¶ 17 & Ex. 46.  The Subpoenaed Parties also stated that "in a good faith effort to avoid motions practice," they would produce certain documents no later than June 2, even in the absence of a protective order.  *Id.*, Ex. 46.  They made clear, however, that "[s]uch production absent a protective order would be without prejudice to, and is not intended to waive, any confidentiality interests in any other documents Google seeks from the Non-Parties or the MPAA . . . ."  *Id.*

On June 1, 2015, Google's counsel asked whether the Subpoenaed Parties would accept service of a motion to compel by email.  In response, the Subpoenaed Parties' counsel reiterated that he did "not believe that we've reached an impasse and would like to continue our meet and confer to see if we can reach an agreement without motion practice."  Wilkens Decl. Ex. 8.

Google filed its motion to compel on June 1, 2015, making no reference in its papers to the Subpoenaed Parties' efforts to continue to meet and confer, or to their commitment to produce documents the very next day.  Rubin Decl.  ¶¶ 16–19; *see* MOL 11.

### G.   The Subpoenaed Parties' Production of All Non-Privileged, Arguably Relevant Documents

Each of the Subpoenaed Parties produced all non-privileged, arguably relevant documents pursuant to their responses on June 2, 2015.  Wilkens Decl. ¶ 9.  The productions

included schedules sufficient to show any contributions to AG Hood or DAGA and any communications between the Subpoenaed Parties and AG Hood during the relevant time period. *Id.* ¶ 9.  No communications between the Subpoenaed Parties and AG Hood were withheld (on the basis of privilege or otherwise).

## ARGUMENT

Google's Subpoenas seek documents that are irrelevant to its case against AG Hood, which turns on the legality of AG Hood's investigation into Google.  As the Mississippi Court explained, while "Google constantly has stated in its papers that [the investigation] seems to have been pushed by the Hollywood industry," the Court could not "think of why it would be germane to a ruling by the court."   MS Dkt. 83 at 73 (preliminary injunction hearing transcript).

Despite their irrelevance – and even though Google should have obtained the requested documents directly from AG Hood – the Subpoenaed Parties have made good-faith efforts to comply with the Subpoenas.  In particular, the Subpoenaed Parties agreed to produce their communications with AG Hood from January 1, 2012 until Google filed its lawsuit against him, and documents or a schedule sufficient to show any contributions to AG Hood or DAGA during that period.  Unsatisfied, Google ran to this Court, misrepresenting the state of discussions and seeking additional discovery to which it is not entitled.  Google's remaining document requests and this Motion are nothing more than inappropriate attempts to burden and harass the Subpoenaed Parties into abandoning their legitimate efforts and their constitutional right to petition government officials.  The Motion should be denied.[16]

---

[16] In an attempt to justify its fishing expedition, Google repeatedly references illegally obtained documents, including privileged communications between Jenner & Block LLP and its clients.  MOL 2–8, 14–15.  Google refers to these documents euphemistically as "[d]ocuments uncovered by reporters," but admits that the true source of these documents was a criminal hack of Sony Entertainment's servers.  *Id.* at 2, 4, 5 n.6.  The FBI has concluded that the hack was perpetrated by the government of North Korea.  *See* National Press Release, FBI, *Update on Sony Investigation* (Dec. 14, 2014), https://www.fbi.gov/news/pressrel/press-releases/update-on-sony-investigation.  Had these documents been received during litigation, lawyers likely would not have been permitted to use them.  *See,*

## I.   Google's Subpoenas Improperly Seek Documents that Google Could Have Obtained from a Party to the Underlying Litigation.

Google's Subpoenas seek from the Subpoenaed Parties "communications with Attorney General Hood," and "documents . . . relating to any monetary or in-kind contributions, payments, donations, gifts, or other consideration" that the Subpoenaed Parties gave to him.  *E.g.*, Rubin Decl. Ex. 3 Requests 1, 3.  Yet Google could have obtained these documents directly from AG Hood, rather than dragging the Subpoenaed Parties into their litigation.  Worse, Google sought these documents from the Subpoenaed Parties at the very outset of its case against AG Hood, long before it knew whether it would obtain the documents from him.

These facts alone are sufficient to demonstrate that Google's Subpoenas were largely improper.[17]  Rule 45 requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring the modification or quashing of a subpoena that "subjects a person to undue burden"); Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring a court to limit discovery where "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive").  In light of this Rule, a host of courts have recognized that a party should not seek

---

*e.g.*, *O'Connor v Lewis*, No. 11-13553, 2013 N.Y. Misc. LEXIS 3318 (N.Y. Sup. Ct., Suffolk Cnty., July 19, 2013); *Massey v Anand*, No. 05-106711, 2012 N.Y. Misc. LEXIS 2945 (N.Y. Sup. Ct., Suffolk Cnty., May 10, 2012); *see also Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252, 2013 WL 1282892, at *6 (N.D. Cal. Mar. 26, 2013) (privileged document illegally stolen and sent to the New York Times was still privileged); *Sackman v. Liggett Group, Inc.*, 173 F.R.D. 358, 365 (E.D.N.Y. 1997) (privileged document illegally stolen and publicly disseminated was still privileged); *cf. In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK)(HBP), 2006 WL 3592936, at *4 (S.D.N.Y. Dec. 1, 2006) (holding that privilege was not waived by Italian authorities' seizure and dissemination of documents because "involuntary or compelled disclosure does not give rise to a waiver").  Google should not be permitted to capitalize on privileged documents illegally obtained from a third party to bootstrap its way into discovery of *additional* documents from the Subpoenaed Parties.  *See Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) (court not prevented from "exercising its equitable powers to control, and preserve the integrity of, its judicial proceedings by limiting the use to which [stolen] documents could be put in the proceedings pending before the court").

[17] As discussed *infra* at 14–21, these categories of documents are the only requested documents even arguably relevant to the Mississippi action.

information through a third-party subpoena that it can obtain directly from a party to the litigation. *See, e.g.*, *Burlodge Ltd. v. Standex Int'l Corp.* (*In re Motion to Compel Compliance with Subpoena Directed at Dep't of Veterans Affairs*), 257 F.R.D. 12, 19 (D.D.C. 2009) ("[E]ven modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other sources."); *In re Penn Central Commercial Paper Litig.*, 61 F.R.D. 453, 467 (S.D.N.Y. 1973) ("The rationale for permitting an independent action for production of documents and things from a nonparty witness presumes a situation in which the items sought are unavailable from a party."); *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. M8-85, 1994 WL 9666, at *1 (S.D.N.Y. Jan. 12, 1994) (stating that the "wiser course" is to deny "discovery from a third party in an ancillary proceeding when that discovery could have been obtained from a primary party in the underlying litigation" (citation omitted)).

The Subpoenaed Parties were thus under no obligation to provide documents that Google could have obtained from AG Hood, including communications with AG Hood and documents or schedules sufficient to show any financial contributions the Subpoenaed Parties made to him. Nonetheless – and despite the documents' irrelevance, *see infra* at 14–17 – the Subpoenaed Parties agreed to produce them in a good-faith effort to avoid motion practice. The Subpoenaed Parties made clear their intention to do so in their April 24 responses and throughout the meet and confer process. *See* Rubin Decl. Exs. 29–31, 39, 46. In addition, when the Subpoenaed Parties received Google's 24-hour ultimatum on May 27, they reiterated that they would produce these documents no later than June 2, even in the absence of a protective order (though without prejudice to or waiving confidentiality as to any other documents that may be produced).[18] The

---

[18] Google contends that the Subpoenaed Parties have "refuse[d] to produce any documents until a confidentiality order is entered to shield the documents from public view." MOL 25. That is false: the Subpoenaed Parties told

Subpoenaed Parties also stated that they would continue to work with Google to avoid litigation. Rubin Decl. Ex. 46 at 1–2.

Apparently unsatisfied with these efforts, Google rushed into court on June 1.  In doing so, Google failed even to mention that the Subpoenaed Parties had promised to produce documents the *very next day*.  Instead, Google blamed the Subpoenaed Parties for a supposed "impasse."  *See, e.g.*, MOL 11.  As the facts demonstrate, however, the Subpoenaed Parties have gone above and beyond what was required of them under Rule 45, and it is Google that has unnecessarily embroiled the Subpoenaed Parties – and this Court – in the underlying litigation.

## II.     The Subpoenaed Parties Have Produced The Only Arguably Relevant Documents in their Possession.

Google's Subpoenas are also improper because they seek documents that are wholly irrelevant to the underlying litigation.  While Google bears the burden of demonstrating that "the information sought is relevant and material to the allegations and claims at issue in the [underlying] proceedings," it has come nowhere close to satisfying that burden here.  *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (internal quotation marks omitted).

### A.     None of the Requested Documents Is Relevant.

As previously explained, the Subpoenaed Parties already have produced two categories of documents: their communications with AG Hood, and schedules sufficient to show their political contributions to him and DAGA, if any.  But they did so as a demonstration of good faith, not because those documents are relevant to the underlying litigation.

In fact, *none* of the documents Google seeks is relevant to the underlying litigation. Google has conceded that the Mississippi action turns on questions of law, not questions of fact –

---

Google before it filed its Motion to Compel that they would produce documents absent a protective order, and they did so.  Rubin Decl. Ex. 46 at 1.  If the Court orders the Subpoenaed Parties to produce additional documents, the parties may then confer regarding the appropriateness of a confidentiality order regarding those documents.  As discussed further below, some of the documents Google seeks are highly sensitive internal Subpoenaed Party documents, which would warrant entry of a protective order.

much less questions of fact that could be answered by documents in the Subpoenaed Parties'

possession.  Indeed, when the discovery "shoe" is "on the other foot" – when Google is resisting

discovery in the Mississippi action – it emphasizes how limited that discovery should be.  In

recently resisting a request for Rule 30(b)(6) testimony, Google insisted that "this case is about

whether the Attorney General can regulate Google's making accessible a specific type of content

– content created by third parties that the Attorney General deems objectionable.  This is a legal

question, squarely answered by the Constitution and the Communications Decency Act

('CDA')."  MS Dkt. 129 at 3.  Google went on to argue that "[t]his case turns largely on

questions of law, and what little fact development needs to be done pertains primarily to the

*Attorney General's own conduct and motivation*."  *Id.* at 13 (emphasis added); *see also* MS Dkt.

83 at 11 (at preliminary injunction hearing, Google's counsel told the Mississippi Court that

"there isn't really a fight on the facts here"); MS Dkt. 84 at 5 (Google told the Mississippi Court

that it needed only "targeted" discovery).  Yet, as explained more fully below, there is no legal or

factual basis for Google's argument that the remaining documents it seeks from the Subpoenaed

Parties go to the limited issue of AG Hood's "conduct and motivation."

The Mississippi Court similarly noted in its ruling that Google agreed with AG Hood

"upon the relevant facts, and . . . viewed th[e] matter primarily as a dispute law."  Rubin Decl.

Ex. 53 at 6.  Google never explains why disputes of law at the preliminary injunction stage

would transform into disputes of fact at the permanent injunction stage.

In fact, as Google has conceded, *see supra* at 2, the Mississippi lawsuit principally

concerns whether AG Hood's investigation of Google and issuance of the CID violate or are

preempted by federal law, including the CDA, the Copyright Act, the Digital Millennium

Copyright Act, and the Food, Drug, and Cosmetic Act.  *See* Complaint, MS Dkt. 1 ¶¶ 4, 85–92,

104–107.  These claims turn on pure issues of law, as to which Google never suggests that the Attorney General's state of mind – or the requested documents – are relevant.

Google nonetheless suggests that AG Hood's motivations are relevant to its claim that "the Attorney General's investigation, and specifically the CID, were intentionally overbroad and burdensome and thus constitute an unreasonable search and seizure in violation of Google's 4th Amendment rights."  MOL 13.  It is well-established, however, that the Fourth Amendment requires an objective inquiry; with limited exceptions not applicable here, a court must ask if "the circumstances, viewed objectively, justify [the challenged] action"; if so, then "that action was reasonable whatever the subjective intent motivating the relevant officials."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2081 (2011) (internal quotation marks omitted; brackets in original); *Olesen v. Morgan*, No. 1:06-CV-959 (FJS/DRH), 2009 WL 2045682, at *4 (N.D.N.Y. July 8, 2009) (dismissing claim that investigatory actions, including issuance of subpoena, violated the Fourth Amendment because they were based on defendant official's "personal vendetta").  Google's Fourth Amendment claim will therefore turn on whether the CID was so overly burdensome as to violate the Constitution.  AG Hood's subjective perspective is irrelevant.

Google also argues that AG Hood's motivation is relevant to his *Younger* defense because "*Younger* is inapplicable where a state official's conduct is improperly motivated or undertaken in bad faith."  MOL 13.  But the Mississippi Court *already* held that *Younger* does not apply because there are no pending state enforcement proceedings.  Rubin Decl. Ex. 53 at 13.  Thus, whether Google could establish the bad-faith exception to *Younger* abstention is irrelevant.

This leaves Google with the argument that AG Hood's motivations are relevant to its First Amendment claim.  MOL 11–12; *see* Complaint, MS Dkt. 1 ¶¶ 93–100.  The First Amendment claim relies on four separate theories, only one of which involves retaliatory motive.

16

Complaint, MS Dkt. 1 ¶¶ 94–97.  Yet the preliminary injunction order demonstrates that even as to retaliation, any documents in the Subpoenaed Parties' possession would be irrelevant. Google's theory, which the Mississippi Court adopted, was that Google's *search results* are protected speech.  Thus, because AG Hood's CID was directed at content that appeared in Google's search results, the CID constituted impermissible "bad faith" and "retaliation" against such speech.  Rubin Decl. Ex. 53 at 18–19.  While that legal holding is subject to challenge in AG Hood's pending appeal to the Fifth Circuit, Google has not identified any reason that the factual record requires supplementation beyond what already existed at the preliminary injunction stage.

### B.    The Subpoenaed Parties Have Produced All Arguably Relevant Documents.

In any event, to the extent AG Hood's motivation *is* relevant to Google's First Amendment claim, the Subpoenaed Parties have produced all responsive non-privileged documents that could shed light on his motivation.  The Subpoenaed Parties have produced all of their communications with AG Hood (as sought by Request No. 3), including any such communications regarding any donations the Subpoenaed Parties made to Hood or DAGA (as sought by Requests Nos. 1 & 2), and any such communications that also included the offices of attorneys general of other states (as sought by Request No. 4).  The Subpoenaed Parties also have produced schedules sufficient to show any donations they made to AG Hood or DAGA (as sought by Requests Nos. 1 and 2).  Thus, the Subpoenaed Parties have fully complied with the Subpoenas to the extent they seek documents that might shed light on AG Hood's motivations.

### C.    The Remaining Documents are Irrelevant to AG Hood's State of Mind.

The remaining requested documents include the Subpoenaed Parties' "communications with" *other* attorneys general offices on which AG Hood was not copied, and internal documents

"relating to" the Subpoenaed Parties' contributions to AG Hood and DAGA.[19]   Google offers no reason to think that AG Hood ever saw those documents, or even knew they existed.   The documents would shed no light on his motivations, and are irrelevant to the Mississippi action.

Indeed, Google's arguments prove the point.   For example, Google contends that the remaining documents "may show . . . that the Attorney General and the Subpoenaed Parties *expressly discussed* use of the CID as a retaliatory measure."   MOL 12 (emphasis added).   But if that were true – and it is not – then the already-produced "communications with Attorney General Hood" would include such "express discussions."   Similarly, Google argues that internal Subpoenaed Party documents may reveal that "the Attorney General and the Subpoenaed Parties knew just how oppressive and burdensome the 79-page CID was."   *Id.*   But any expression of the Attorney General's motivations must come from his own mouth, *i.e.*, from the "communications with him" that the Subpoenaed Parties have already provided.   And even if internal communications might show that the *Subpoenaed Parties* thought the CID was "oppressive and burdensome," that would shed no light on AG Hood's thinking.   In addition, Google contends that the subpoenaed documents could demonstrate that it was the Subpoenaed Parties' "business interests and campaign contributions, rather than concerns about Mississippi law, that moved the Attorney General to action."   *Id.* at 13.   Again, however, the only documents that might *directly* demonstrate AG Hood's motivations are the "communications" already produced.   To the extent one could draw an *inferential* link between the Subpoenaed Parties' contributions and AG Hood's motivations, the Subpoenaed Parties have provided schedules sufficient to show those contributions.   Google thus offers no convincing reason why additional documents – including sensitive internal communications regarding potential political contributions – are relevant.

---

[19] Google's Motion to Compel also argues for the production of other categories of documents that are not even within the scope of the Subpoenas.   *See infra* at 21.

Nor does Google offer any case law to support its view.  Citizens have been communicating with government officials since the dawn of the Republic, yet Google identifies no case ever in which a court has directed production of – or even relied on – private citizens' documents to establish the motives of government officials.  To the contrary, courts have consistently rejected efforts to inject the motives of third parties into constitutional challenges to state action.  For instance, in *AFSCME v. Scott*, 277 F.R.D. 474 (S.D. Fla. 2011), the ACLU served as counsel to plaintiffs challenging Florida's drug-testing laws, and then received a subpoena concerning its "knowledge and position" on drug tests.  The court held that the documents were irrelevant, stating: "Whatever the ACLU knows or believes about the frequency or propriety of employer drug testing or drug use simply has no relevance to the constitutional claim at issue – whether drug testing of these state employees in executive agencies is permissible under the Fourth Amendment."  *Id.* at 478.  Similarly, in *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005), a case challenging the constitutionality of campaign finance laws, the court quashed a subpoena directed to third-party *amici*, finding that the sought-after documents were irrelevant to the constitutional issues in the case.  *Id.* at 51–52.[20]

More generally, Google does not cite any case in which a court has relied on the private statements of one entity to establish the state of mind of another, which is the theory Google advances here.  In fact, numerous courts have rejected as irrelevant similar attempts to obtain discovery regarding facts that a party did not know or communications he did not see.  For

---

[20] Moreover, a decision adopting Google's theory that, because the Subpoenaed Parties exercised their constitutional right to communicate with and raise issues of concern to a law enforcement official, their private communications are discoverable to shed light on the government's state of mind, would have implications far beyond this case.  Suppose a victim of consumer fraud approaches a consumer protection bureau, which initiates an investigation of the company accused of fraud.  Under Google's position, the company could subpoena the victim and obtain her personal files – even those she never showed to the bureau – because her personal files purportedly might shed light on the bureau's motives.  Likewise, suppose a church persuades a city council to grant it a zoning variance.  Under Google's position, a third party challenging the zoning variance could sue the church and obtain its internal communications on the theory that they may shed light on the city council's motives.

example, in *Condit v. Dunne*, 225 F.R.D. 100, 111 (S.D.N.Y. 2004), the plaintiff sued the defendant for defamation, and the defendant sought discovery regarding the plaintiff's sexual relationships to support, *inter alia*, his defense of substantial truth.   The court limited that discovery to information the defendant knew, because what is "[r]elevant to [the defendant's] state of mind is only what he was aware of at the time he made the statements at issue." *Id.*

That logic is even more powerful where, as here, a party seeks to rely on the statements of a person or group to establish the state of mind of a *different* individual.   In *Food Lion, Inc. v. United Food & Commercial Workers International Union*, 103 F.3d 1007 (D.C. Cir. 1997), an employer sued a union for abuse of process, and subpoenaed two non-party unions seeking documents related to their "corporate campaigns" against other employers, *id.* at 1013.   The court quashed the subpoenas, reasoning that because the employer's case turned on the *defendant*'s state of mind, the states of mind of *other* unions were irrelevant.   *Id.*   Likewise, in *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4 (D.D.C. 2004), an accused patent infringer asserted a defense of good-faith reliance on counsel's advice, and the patent holder served a subpoena on counsel seeking opinion letters that were *not* shared with the accused infringer.   The court found those documents irrelevant, refusing to "assume, in the absence of any contrary evidence, that drafts of [counsel's] opinions are somehow probative of the [infringer's] state of mind despite the fact that they have not been shared with [the infringer]." *Id.* at 10.   As these cases demonstrate, there is no basis for Google's contention that communications among the Subpoenaed Parties' employees, or communications with *other* attorneys general – which AG Hood and his employees never saw or knew existed – are relevant to AG Hood's state of mind.

**D.    Many of The Remaining Documents Sought By Google Are Outside the Scope of the Subpoenas.**

In addition to seeking irrelevant documents, Google faults the Subpoenaed Parties for failing to produce documents that Google never even requested.   As previously discussed, Google's Subpoenas requested four categories of documents:

(1)    "DOCUMENTS discussing or RELATING TO" the Subpoenaed Parties' "monetary or in-kind contributions . . . to ATTORNEY GENERAL HOOD," Rubin Decl. Ex. 3;

(2)    "DOCUMENTS discussing or RELATING TO" the Subpoenaed Parties' "monetary or in-kind contributions . . . to DAGA," *id.*

(3)     "COMMUNICATIONS with ATTORNEY GENERAL HOOD," *id.*

(4)    "COMMUNICATIONS with any ATTORNEY GENERAL'S OFFICE that RELATE TO or REFER TO GOOGLE" or certain topics, *id.*

Google's Motion seeks documents that fall outside the plain language of these requests. Google faults the Subpoenaed Parties because, in response to Request No. 3, they did not produce internal "meeting notes, agendas, [and] action lists and reports on verbal conversations" with AG Hood, or "documents in which meetings and conversations with the Attorney General were planned or discussed."  MOL 12, 14.  But those documents are not "communications *with* Attorney General Hood."  *See* Rubin Decl. Ex. 3 ¶ 2 (defining "communications" as "any form of personal communication").  They are, at best, documents *relating to* communications with AG Hood – something Google never requested.   Similarly, Google now seeks "internal documents [that] *reveal* communications from other state attorneys general."  MOL 15 (emphasis added). But those documents are not "communications *with* an[] Attorney General's office."  They are therefore outside the scope of the Subpoenas.[21]

---

[21] These documents are also irrelevant.  For example, Subpoenaed Party employees' statements in "documents in which meetings and conversations with the Attorney General were planned," MOL 14, might reveal the motivations of those employees, but would shed no light on the motivations of AG Hood.

* * *

In sum, the Subpoenaed Parties have produced the only arguably relevant responsive documents.  Google's remaining requests fall far outside the scope of discoverable material.

**III.    Even if the Additional Subpoenaed Documents Were Relevant – And They Are Not – The Burdens Associated with Searching For, Reviewing, and Producing Them Would Far Outweigh Any Benefit.**

Even if Google could demonstrate that the additional documents it seeks are relevant, its Motion should be denied because compliance with the Subpoenas would impose an "undue burden" on the Subpoenaed Parties.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  In conducting the burden analysis, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation."  *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936(KMW), 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (quotation marks omitted; brackets in original).[22]  Moreover, "[t]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (quotation marks omitted).

Google seeks to compel the Subpoenaed Parties to search for, review, and produce large numbers of documents that are irrelevant.  For example, Google requests communications between the Subpoenaed Parties and *any* attorney general's office in the United States that reference *or relate to* Google and certain keywords.  The Subpoenaed Parties have already produced any such communications with AG Hood, including those that also include the

---

[22] *See also, e.g.*, *BSN Med., Inc. v. Parker Med. Assocs., LLC*, No. 10 Misc. 15, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." (quotation marks omitted)); *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (individual's "status as a non-party entitles him to consideration regarding expense and inconvenience" of compliance (internal quotation marks omitted)); *Jack Frost Labs., Inc. v. Physicians & Nurses Mfg. Corp.*, No. 92 CIV 9264 (MGC), 1994 WL 9690, at *5 (S.D.N.Y. Jan. 13, 1994) (courts must "be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others").

attorneys general offices of other states.  To ask the Subpoenaed Parties to go further and search for communications with the attorneys general offices of all 49 other states (as well as U.S. territories) *that did not include AG Hood's office*, and review those communications to determine whether they refer or relate to Google or to the other topics listed in Request No. 4, is nothing more than a highly burdensome fishing expedition, one that would require the Subpoenaed Parties to troll through large numbers of documents entirely irrelevant to the Mississippi action.

Similarly, Google asks that the Subpoenaed Parties produce all "documents discussing or relating to" contributions to AG Hood or DAGA.  The Subpoenaed Parties have already produced documents showing any such donations, as well as *all* of their communications with AG Hood.  The additional documents within the scope of the Subpoenas would include, among other things, highly sensitive internal documents regarding the Subpoenaed Parties' political donation plans and strategies that reference donations to AG Hood or DAGA, and internal communications addressing the logistics of such contributions – who wrote a check, which account it came from, etc.  These documents have no bearing on the Mississippi action.

The burden Google seeks to impose would not be limited to the logistics and expense of searching for, reviewing, and producing the requested documents, but would include the impact on the Subpoenaed Parties' First Amendment rights.  *See Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 595–96 (1st Cir. 1980) (in determining what limits to place on discovery requests, "courts must balance the potential harm to the free flow of information that might result against the asserted need for the requested information").  The Subpoenaed Parties' communications with attorneys general, like their internal communications regarding political contributions, are core political speech and petitioning activity.  Disclosure might reveal the Subpoenaed Parties' strategies to protect their copyrighted works and other interests, as well as

23

their priorities and strategies regarding political contributions more generally, and it is likely to chill that speech in the future.[23]   Thus, the burdens of production plainly outweigh any limited relevance the remaining documents might have, and the Motion should be denied.

## IV.   Google's Privilege Arguments are Irrelevant at this Juncture.

Rather than demonstrate that the requested documents are relevant or address the burden it seeks to impose on the Subpoenaed Parties, Google devotes one-third of its brief to the Subpoenaed Parties' *potential* invocations of privilege.   Those privilege arguments are at best irrelevant and premature.

Google's primary argument is that the Subpoenaed Parties waived any privilege by submitting the documents to AG Hood.   MOL 15–17.   But the Subpoenaed Parties already have produced communications with AG Hood, *without* claiming privilege.   Wilkens Decl., ¶¶ 6, 9.

As for all other documents, the Subpoenaed Parties have consistently contended that they are irrelevant, that the requests for them are overbroad, and that compliance with the requests would impose an undue burden.   To be sure, in their written objections and during the meet and confer, the Subpoenaed Parties reserved their right to assert privilege objections in the future.   In particular, the Subpoenaed Parties stated that they would likely assert privilege over at least some internal documents discussing or relating to political donations to AG Hood or DAGA, should this Court hold that such documents are subject to discovery.   Wilkens Decl., ¶ 6.

---

[23] For the same reason, and although arguments regarding privilege are not before the Court, *see infra* Part IV, such communications are likely subject to a First Amendment privilege.  *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) (holding that proponents of ballot measure were entitled to protective order barring disclosure of internal communications concerning strategy and messaging for campaign); *Chevron Corp. v. Donziger*, No. 13-MC-80038 CRB (NC), 2013 WL 1402727, at *2–6 (N.D. Cal. Apr. 5, 2013) (quashing subpoenas issued to a third-party organization seeking documents regarding organization's strategy for "pressure campaign" against Chevron); *Int'l Society for Krishna Consciousness, Inc. v. Lee*, No. 75 Civ. 5388 (MJL), 1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) (holding that First Amendment privilege excused plaintiffs from responding to interrogatories that sought, *inter alia*, "compelled disclosure of the sources or uses of an organization's funds").

Google nonetheless contends that the Subpoenaed Parties waived any privilege claims by failing "to substantiate [them] in a privilege log." MOL 22. Google is incorrect. "If a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (quotation marks omitted); *see also, e.g.*, *Grand River Enters. Six Nations, Ltd. v. King*, No. 02 CIV 5068 (JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan. 12, 2009) (holding that defendants "did not have to complete their privilege logs while [their overbreadth] objection was pending"); Fed. R. Civ. P. 45 advisory committee's note (1993) (noting correspondence between Rule 26(b)(5) and analogous provisions of Rule 45, which applies to subpoenas). That is precisely the case here: the Subpoenaed Parties' relevance, overbreadth, and undue burden objections cover the remaining documents.[24] Should this Court nonetheless decide that those documents must be produced, the Subpoenaed Parties will search for and review them, and log any privilege claims at that time – an exercise that would only add to the very significant burden that Google seeks to impose on the Subpoenaed Parties. *See supra* at 22–24. In the meantime, that the Subpoenaed Parties have not provided a privilege log reflects only their good-faith (and correct) belief that these documents are categorically outside the bounds of permissible discovery.

## CONCLUSION

For the foregoing reasons, the Subpoenaed Parties respectfully request that this Court deny Google's Rule 45 Motion to Compel in its entirety.

---

[24] Google cites Jenner's privilege treatise for the proposition that failure to provide a privilege log can result in waiver. MOL 23. Google fails to mention that on the very next page, Jenner's Treatise cites *Philip Morris* as an exception to that principle. Moreover, even where a party fails to timely serve a privilege log, "waiver is not automatic." *Philip Morris*, 347 F.3d at 954. Instead, it is "a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith" – none of which is at issue here. *Id.* (quotation marks omitted).

Dated: June 15, 2015                        Respectfully submitted,

                                            /s/ Scott B. Wilkens

                                            Scott B. Wilkens (*pro hac vice*)
                                            JENNER & BLOCK LLP
                                            1099 New York Avenue, N.W.
                                            Suite 900
                                            Washington, DC 20001-4412
                                            Phone: (202) 639-6072
                                            Fax: (202) 639-6066
                                            Email: swilkens@jenner.com

                                            *Attorney for Respondents Twenty-First Century Fox, Inc.*, *NBCUniversal Media, Inc.*, and *Viacom Inc.*

26