UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOGGLE INC.,<br><br>                    Petitioner,<br>v.<br><br>TWENTY-FIRST CENTURY FOX, INC.,<br>NBCUNIVERSAL MEDIA, INC., and<br>VIACOM, INC.,<br>                    Respondents. | Case No. 1:15-mc-00150-P1<br><br>**ECF CASE**<br><br>CASE IN OTHER COURT:<br>No. 3:14-cv-00981-HTW-LRA (S.D. Miss.)<br><br>**DECLARATION OF SCOTT B. WILKENS IN SUPPORT OF OPPOSITION TO GOOGLE INC.'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** |

I, Scott B. Wilkens, hereby declare as follows:

1.    I am a partner with the law firm Jenner & Block LLP and represent Respondents Twenty-First Century Fox, Inc., NBCUniversal Media, Inc., and Viacom, Inc. (collectively, the "Subpoenaed Parties"), in connection with non-party subpoenas issued by Petitioner Google, Inc.("Google"). I submit this declaration in support of the Subpoenaed Parties' Opposition to Google's Rule 45 Motion to Compel Compliance with Subpoena. I make this declaration based on personal knowledge, except where otherwise noted herein.

### The Subpoenaed Parties' Efforts to Meet and Confer with Google

2.    On May 11, 2015, I met and conferred by telephone with counsel for Google, including Michael Rubin of Wilson Sonsini Goodrich & Rosati, regarding Google's subpoenas to the Subpoenaed Parties and the Subpoenaed Parties' objections and responses.

1

3. With respect to Google's Requests Nos. 1 and 2, I reconfirmed that, as stated in the Subpoenaed Parties' objections and responses, the Subpoenaed Parties would produce documents or schedules sufficient to show any Subpoenaed Parties' contributions to Attorney General Hood of Mississippi or the Democratic Attorneys General Association ("DAGA"). Counsel for Google stated that the Subpoenaed Parties should also produce internal documents referencing any such contributions, but did not explain the relevance of those documents to the Mississippi Action, and instead said that as to relevance the parties would "agree to disagree."

4. With regard to Google's Request No. 3, I reconfirmed, as stated in the Subpoenaed Parties' objections and responses, that the Subpoenaed Parties would produce any communications they had with Attorney General Hood's office, without limitation as to subject matter. I explained that such communications with Attorney General Hood's office would include, among other things, any communications regarding contributions to Attorney General Hood or DAGA, which would also be responsive to Requests 1 and 2. Counsel for Google argued that the Subpoenaed Parties should produce not only their communications with Attorney General Hood, but also any third party communications with Attorney General Hood that were subsequently forwarded by the third party to one of the Subpoenaed Parties. I stated that any communications between third parties and Attorney General Hood's office that were forwarded to one of the Subpoenaed Parties are beyond the scope of the subpoenas, could be obtained from Attorney General Hood, and in any event would be unduly burdensome to collect, review, and produce.

5. As to Request No. 4, I reconfirmed, as stated in the Subpoenaed Parties' objections and responses, that the Subpoenaed Parties would produce their communications with Attorney General Hood's office, including any communications that also included the offices of

the attorneys general of other states. Google's counsel asserted that the Subpoenaed Parties' communications with other attorney generals' offices that did not include Attorney General Hood's office were of "core" relevance to the Mississippi Action, but did not explain the basis for that claim. Google's counsel said that as to relevance the parties would "agree to disagree." I stated that the Subpoenaed Parties did not believe these documents were in any way relevant to the Mississippi Action, and that if Google could not explain their relevance, the Subpoenaed Parties would not agree to engage in the undue burden of searching for, reviewing, and producing these communications.

6. With respect to all of Google's Requests, I stated that as to the categories of documents the Subpoenaed Parties had agreed to produce, the Subpoenaed Parties were not withholding any documents based on privilege. However, as to the categories of documents the Subpoenaed Parties objected to producing, I reserved the Subpoenaed Parties' right to assert any privilege objections in the future. In particular, I noted that Requests 1 & 2 were so broad in scope that they would likely sweep in privileged internal communications and other documents concerning political donations.

7. In the meet and confer, I also raised the issue of the entry of a protective order prior to the production of documents, and Google's counsel expressed a willingness to consider the issue further.

8. Attached as <u>Exhibit 1</u> is true and correct copy of a June 1, 2015 email exchange with Mr. Rubin.

### The Subpoenaed Parties' Document Productions

9. On June 2, 2015, each of the Subpoenaed Parties produced to Google all of the documents they had agreed to produce in their responses and objections, based on a reasonable

3

inquiry. For each Subpoenaed Party that made any contributions to AG Hood or DAGA during the relevant time period, the Subpoenaed Party's production included a schedule sufficient to show those contributions. Each Subpoenaed Party's production also included any communications between the Subpoenaed Party and AG Hood's office during the relevant time period.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of June 2015, at New York, New York.

Scott B. Wilkens