**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOOGLE INC., | CASE NO.: 1:15-mc-00150-P1 |
| Petitioner, | CASE IN OTHER COURT: |
| v. | No. 3:14-cv-00981-HTW-LRA (S.D. Miss.) |
| TWENTY-FIRST CENTURY FOX, INC., NBCUNIVERSAL MEDIA, INC., and VIACOM, INC., | **ECF CASE** |
| Respondents. | |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF GOOGLE INC.'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Morris J. Fodeman
WILSON SONSINI GOODRICH & ROSATI PC
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Email: mfodeman@wsgr.com
Phone: (212) 999-5800
Fax: (212) 999-5899

David H. Kramer (admitted *pro hac vice*)
Michael H. Rubin (*pro hac vice* forthcoming)
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304
Email: dkramer@wsgr.com
Email: mrubin@wsgr.com
Phone: (650) 496-9300
Fax: (650) 493-6811

*Attorneys for Petitioner*
GOOGLE INC.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..................................................................................................................1

RESPONSIVE AND ADDITIONAL BACKGROUND .......................................................3

ARGUMENT ..........................................................................................................................5

    I.     The Relevance of the Documents Google Seeks is Plain. ..........................................5

    II.    Google's Subpoenas Do not Impose an Undue Burden. ...........................................7

    III.   Google Is Not Seeking Privileged Materials, and the Subpoenaed Parties' Failure to Substantiate Their Privilege Assertions Amounts to a Waiver. ............................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arista Records LLC v. Lime Group LLC*,
   2011 U.S. Dist. LEXIS 20709 (S.D.N.Y. Mar. 2, 2011) ................................................... 9

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................................................... 9

*Food Lion v. United Food & Commer. Workers Int'l Union*,
   103 F.3d 1007 (D.C. Cir. 1997) ...................................................................................... 6

*In re Bonanno*,
   344 F.2d 830 (2d Cir. 1965) .......................................................................................... 10

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) ........................................................................... 10

*Nova Biomed. Corp. v. i-Stat Corp.*,
   182 F.R.D. 419 (S.D.N.Y. 1998) .................................................................................... 9

*United States v. Philip Morris, Inc.*,
   347 F.3d 951 (D.C. Cir. 2003) .................................................................................. 9, 10

## OTHER AUTHORITIES

Russell Brandom,
   "Project Goliath: Inside Hollywood's Secret War Against Google,"
   The Verge (Dec. 12, 2014) ("Brandom Article"), *available at*
   <http://www.theverge.com/2014/12/12/7382287/project-goliath> .............................. 3, 10

Joe Mullin,
   "Hollywood v. Goliath: Inside the Aggressive Studio Effort to Bring
   Google to Heel," Ars Technica (Dec. 19, 2014) ("Mullin Article"),
   *available at* <http://arstechnica.com/tech-policy/2014/12/how-
   hollywood-spurned-by-congress-pressures-states-to-attack-google/> .............................. 7

Nick Wingfield and Eric Lipton,
   "Google's Detractors Take Their Fight to the States," *The New York
   Times* (Dec. 16, 2014) ("Wingfield and Lipton Article"), *available at*
   <http://www.nytimes.com/2014/12/17/technology/googles-critics-enlist-
   state-attorneys-general-in-their-fight.html> ................................................................... 10

**INTRODUCTION**

Google alleges in the underlying action that Mississippi Attorney General Jim Hood ("AG Hood") unlawfully silenced Google's speech through a series of threats and ultimately a retaliatory civil investigative demand ("CID"). The Honorable Judge Henry T. Wingate has ruled that Google is likely to succeed against AG Hood under Constitutional and federal law.

It is undisputed that the parties before the Court on this motion — Twenty-First Century Fox, Inc. ("Fox"), NBCUniversal Media, Inc. ("NBC"), and Viacom, Inc. ("Viacom") (collectively "the Subpoenaed Parties" or "the Studios") — played key roles in AG Hood's unlawful conduct. The record already shows that as part of a secret plan called "Project Goliath," they spent hundreds of thousands of dollars lobbying *state* attorneys general to pressure Google to alter its search results and other products in service of their agenda on *federal* copyright issues. In connection with Project Goliath, lobbyists for the Subpoenaed Parties formulated AG Hood's demands to Google and ghost wrote AG Hood's talking points, letters and even the CID that prompted Google's lawsuit and Judge Wingate's injunction.

Despite this extensive involvement in the events giving rise to the underlying litigation, the Subpoenaed Parties claim here that: (a) documents regarding Project Goliath, beyond their direct communications with AG Hood, are irrelevant; (b) they should not, in any event, be burdened to produce what they have; and (c) that such materials might be privileged — but it is "premature" to assess that issue. None of these arguments has merit.

Judge Wingate has made clear that AG Hood's state of mind is a critical issue in this case. And the question of AG Hood's motivation is not, as the Subpoenaed Parties contend, a purely legal one where the parties agree on the facts. Rather, it will be a hotly debated issue until there is a final ruling on the merits of Google's claims, and the issue to which Google's

1

limited discovery here is directed.

Fox and NBC have admitted they donated heavily to AG Hood and his proxy,[1] but that admission alone is not what Google requested. Rather, Google sought documents discussing or relating to any manner of support furnished to AG Hood or the Democratic Attorneys General Association ("DAGA") by the Subpoenaed Parties, or at their direction. The Subpoenaed Parties suggest they have "large numbers" of "internal documents regarding the Subpoenaed Parties' political donation plans and strategies that reference donations to AG Hood and DAGA." Subpoenaed Parties Opposition ("Opp."), Dkt. No. 16, at 22-23. That is just the sort of material Google is interested in, especially so in documents discussing what the Subpoenaed Parties expected from AG Hood in return for their support. Given that their efforts appear to have borne fruit, the Subpoenaed Parties' internal documents on the subject are reasonably calculated to lead to evidence of AG Hood's motives.

Google also asked the Subpoenaed Parties to produce communications with other state attorneys general about Project Goliath because, despite the Subpoenaed Parties' substantial efforts to find other states to join AG Hood, AG Hood was the only attorney general who issued a retaliatory subpoena. The reasoning of the state officials who declined, particularly insofar as they recognized that AG Hood's tactics were impermissible, will likely provide ammunition for Google in cross-examination regarding AG Hood's state of mind.

The Subpoenaed Parties' burden objection is not well taken. Google's subpoenas are narrowly drawn, amounting only to four requests seeking three categories of documents that

---

[1] Supplemental Declaration of Michael H. Rubin in Support of Google Inc.'s Rule 45 Motion to Compel Compliance with Subpoena ("Supp. Rubin Decl."), Exhs. 1, FOX000013-14 (showing donations to AG Hood's campaign committee and to DAGA by Fox); 2, NBCU000027 (showing donations to AG Hood's campaign committee by NBC). All citations formatted "FOX0000…" or "NBCU0000…" refer to documents produced to Google on June 3, 2015 in response to Google's subpoena. All citations formatted "JB_0000…" refer to Bates numbers of documents produced by the law firm of Jenner & Block, LLP to Google on June 12, 2015 in response to a separate subpoena.

2

may help explain AG Hood's targeting of Google. The Subpoenaed Parties offer rhetoric, but no proof of any burden they would face. Even if they had offered evidence, any burden would not be undue. The Subpoenaed Parties spent hundreds of thousands of dollars and years on anti-Google lobbying efforts with AG Hood, culminating in a deliberately oppressive 79-page CID to Google.[2] Now that that campaign is the subject of litigation and has been judged likely unlawful, its sponsors cannot claim to be mere bystanders.

Finally, the Subpoenaed Parties claim that their documents might be subject to a privilege but they need not substantiate such an assertion until some later point in time. That is wrong. Google has explained why there is no privilege in the documents it seeks. If the Subpoenaed Parties believed differently, it was incumbent upon them to support that position. They have failed to do so. Accordingly, Google asks this Court to order the immediate production of the materials it has requested.

## RESPONSIVE AND ADDITIONAL BACKGROUND

From the start, the Subpoenaed Parties' response to the Subpoenas has been marked by misdirection and delay, a pattern continued in their opposition briefs. For example, they argue at length that Google's March 12 Subpoenas were premature because discovery had not opened in the underlying case. Opp. at 6-7. They then relegate to a footnote the fact that Judge Wingate has already rejected that contention in an order. *Id*. at 8 n.15 (claiming Mississippi Court "appeared to retroactively modify the schedule"); Rubin Decl. ¶ 5 & Exh. 14 at 2 (confirming that "Discovery commenced for the parties and third parties on March 2, 2015.").

Following that order, and after two months of repeated meet-and-confer efforts that yielded not a single document, Google filed this motion. The Subpoenaed Parties contend this

---

[2] *See* Brandom Article (describing proposal by MPAA to studios for potential budgets to fund anti-Google "Project Goliath" efforts, ranging from $585,000 to $1.175 million annually).

3

too was premature; that Google should have continued the fruitless back-and-forth. Opp. at 8-10. But as Google explained, it had only a short window to complete discovery (through July 9, 2015) and could not wait any longer.[3] Briefing on the motion has confirmed that the parties' impasse is ripe for judicial consideration.

Only after Google filed this motion, and a parallel one against the Subpoenaed Parties' lobbyists in Washington DC, did it begin to receive a trickle of the documents it requested. From just that meager production, it is clear that considerably more relevant material has been withheld. A five-line spreadsheet produced by Fox, for example, shows that it made a $25,000 contribution to DAGA in early 2012 — the year AG Hood began pursuing Google. Supp. Rubin Decl. Exh. 1, FOX000013-14. On July 24, 2013, it made another $25,000 contribution to DAGA (*id.*) — one week before AG Hood made a public speech accusing Google of "taking advantage of our country and the pain of our people." MS Dkt. 1 at ¶ 47 (Google's Mississippi Complaint). In March 2014, Fox upped its DAGA contribution to $50,000. *Id.* That came a month after a meeting that AG Hood coordinated with the Subpoenaed Parties' lobbyists, after which he made another public speech castigating and threatening Google. MS Compl. ¶¶ 58-68. Shortly thereafter, AG Hood was named president of DAGA.

The Subpoenaed Parties concede in their opposition brief that these contributions (and presumably the extensive non-cash consideration for Project Goliath) were part of a larger "strategy." Opp. at 23. That strategy, and its impact on AG Hood's investigation of Google, is undoubtedly reflected in internal documents that Google has asked for, but has not received.

---

[3] After AG Hood represented that his office was unable to timely produce documents that Google requested because a member of his staff was ill, Judge Wingate recently extended the discovery period by 30 days. MS Dkt. 133 (discovery now closing in the underlying case on August 10, 2015). All citations herein to MS Dkt. refer to the docket in the underlying action pending before Judge Wingate.

## ARGUMENT

### I.  The Relevance of the Documents Google Seeks is Plain.

*AG Hood's Bad Faith is a Central Issue in the Case.*  Google's subpoenas seek documents from the parties behind AG Hood's investigation that are reasonably calculated to reveal the motivation for the threats and demands he visited upon Google.  Google contends, and Judge Wingate has found it likely, that AG Hood acted in bad faith to coerce Google into stifling speech. As Judge Wingate explained:

> Google has submitted competent evidence showing that the Attorney General issued the subpoena in retaliation for Google's likely protected speech, namely its publication of content created by third-parties.  Given the gravity of the rights asserted herein, the court finds it appropriate to enjoin further action on behalf of the Attorney General until a determination on the merits of Google's claims is made.

Rubin Decl. Exh. 53 at 19 (PI Order).  It is that "determination on the merits" for which Google seeks the evidence requested here.  If Google can prove that AG Hood's actions were retaliatory and in bad faith, it will prevail on its claim that AG Hood violated Google's rights.  Given the role the Subpoenaed Parties played in procuring AG Hood's actions, requests for their documents relating to that procurement are directly relevant to the case.[4]

In their opposition brief, the Subpoenaed Parties claim that AG Hood's bad faith is effectively a legal issue on which the facts are agreed and that this dispute of law was essentially settled by Judge Wingate's Preliminary Injunction Order. Opp. at 14-15 (questioning "why disputes of law at the preliminary injunction stage would transform into disputes of fact at the permanent injunction stage").  That is specious. Although Judge Wingate held that there was competent evidence of bad faith to support his preliminary injunction order, AG Hood certainly

---

[4] The Subpoenaed Parties misleadingly suggest Judge Wingate questioned why their involvement in AG Hood's conduct was germane to the case.  Opp at. 3, 11.  Judge Wingate actually questioned why it was necessarily germane to the preliminary injunction motion, a motion where Google had made its showing of bad faith and AG Hood offered no evidence in response.  MS Dkt. 83 at 73 (PI hearing transcript).  In any event, questions about what Judge Wingate had in mind are properly consigned to Judge Wingate, one of several reasons why Google has moved to transfer this motion to him.  *See* Dkt. No. 5.

has not conceded that he acted in bad faith. Given the high profile nature of this action and the importance of this issue, Google is entitled to make as strong a showing on the merits as it can.

*The Subpoenaed Parties' Other Arguments Challenging Relevance are Misplaced.*

Google seeks internal communications related to the Subpoenaed Parties' contributions to AG Hood and DAGA.  Rubin Decl. Exh. 3 (Requests 1 and 2 asking for "documents *discussing or relating to* any monetary or in-kind contributions … or other consideration" (emphasis added)). The Subpoenaed Parties contend that only documents AG Hood physically "saw" could be relevant in this case.  Opp. at 18.  This is simply not so.  Internal communications about political donations to AG Hood, such as those recounting private meetings or conversations with him, could reveal what AG Hood said he would deliver in light of their donations and thus shed light on this thinking regardless of whether AG Hood saw the documents.[5]  Further, the requests do not only target documents relating to monetary contributions, they also seek documents regarding any "other consideration" supplied, such as work the Subpoenaed Parties did for AG Hood on public relations matters, on strategy-setting, or on legal research.  These documents are reasonably calculated to lead to the discovery of admissible information regarding the motivations for AG Hood's illicit investigation of Google.

Communications with other state attorneys general easily meet the relevance test as well. The Subpoenaed Parties' lobbyists aggressively pursued other states' officials, and had even

---

[5] The Subpoenaed Parties' own authority recognizes that discovery is appropriate in cases like this one — where the Subpoenaed Parties heavily influenced AG Hood's investigation.  *See* Opp. at 20 (*citing Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007 (D.C. Cir. 1997)).  In *Food Lion*, the question was whether to order "a third party to the underlying abuse of process litigation to produce fourth-party documents unrelated to either party in that litigation." *Id*. at 1012-14 (movant sought documents from "two completely independent unions which have absolutely no connection" to case).  In that very different context, the court said the subpoena pushed past the outer bounds of relevance. But the court went on to say that its thinking would be different if "a number of unions were conspiring under the aegis of a broader organization ... to carry on coordinated 'corporate campaigns' encompassing a shared strategy of litigation." *Id.* at 1014 n.10.  That is precisely what happened here: the Subpoenaed Parties and AG Hood engaged in a "coordinated ... campaign[] encompassing a shared strategy" against Google, and Google seeks specific documents regarding that campaign to shed light on AG Hood's state of mind.

drafted "an adaptable draft CID," in the hopes of rallying others to AG Hood's cause. *See* Supp. Rubin Decl. Exh. 3, JB_00000390-91. They found no takers.[6] *See* Mullin Article (quoting MPAA lobbyist directing that "[s]ome subset of AGs (3-5, but Hood alone if necessary) should move toward issuing CIDs before mid-May"). Google is entitled to know why no one else would participate, as their reasons (e.g. the impropriety of the conduct) were undoubtedly communicated to AG Hood and reflect on his state of mind.

Finally, it bears repeating that the standard here is not admissibility, but discoverability. Even if a Subpoenaed Party's internal recap of a conversation with AG Hood or a different state's official were somehow inadmissible at trial, the document would still reveal the fact of that conversation, giving Google evidence for further investigation or cross examination.

## II. Google's Subpoenas Do not Impose an Undue Burden.

The Subpoenaed Parties paint themselves as innocent bystanders swept up into litigation that they have nothing to do with. They cite cases standing for the unremarkable proposition that third-party discovery should be narrowly tailored when possible, chiding Google for not further compromising its extremely limited requests. Opp. at 22. They also claim that that they have volumes of material regarding "donation plans and strategies that reference donations to AG Hood or DAGA" and that requiring them to search for all communications about Google with attorneys general in other states would require them to "troll through large numbers of documents." *Id*. at 22-23. All of this, they say, means that Google's subpoena presents an

---

[6] The inability to get other state attorneys general to join AG Hood's CID was not for lack of trying. AG Hood tried but failed to get the Connecticut AG to issue a CID. Supp. Rubin Decl. Exh. 4, JB_00000400-01 (June 2014 email from AG Hood stating, "If I don't talk [the Connecticut AG] into issuing a CID to Google by Thursday, I will advise my colleagues that I intend to send ours in a couple of weeks."). Likewise New York. *Id*. Exh. 3, JB_00000390-91 (email from lobbyist Mike Moore saying that he knew AG Hood had spoken with New York's AG and "hope[d] he will issue the CID"). And California's AG turned down AG Hood's offer to host a meeting with Google saying "she had decided not to sign on to the AG letter currently being drafted." Rubin Decl. ¶ 26, Exh. 58 at D-000084-85 (Sept. 17, 2013 email from MPAA to executives at Fox, NBC, Viacom subsidiary Paramount, and others).

"undue burden" from which they should be protected.  They are wrong in each respect.

***Google's requests are narrowly tailored***.  The Subpoenaed Parties emphasize that discovery to third parties should be narrow.  *Id*. at 22 & n.22.  Google agrees.  That is why Google asked the Subpoenaed Parties only for: (1) communications with AG Hood, (2) communications with other attorneys general (whom they lobbied aggressively) regarding Project Goliath, and (3) information about contributions and other consideration given to AG Hood and DAGA. These categories of documents are specific, focused on issues relevant to this case, and readily lend themselves to targeted keyword searches.  They are also limited in time, seeking only documents from the last three years, during which "Project Goliath" was operative.

Google's limited subpoena is a stark contrast to the sweeping 79-page CID that the lobbyists for these same Subpoenaed Parties drafted.  Considering that, and given that their contributions and solicitations drove the misconduct at issue, the Subpoenaed Parties' complaints that Google's requests are "overbroad" and "highly burdensome" ring hollow.

***The Subpoenaed Parties Have Not Proved Any Undue Burden***.  Although they assert that complying with Google's subpoenas would require searching and reviewing "an enormous number of documents to find the illusory needle in the haystack," they have provided no evidence at all to Google or the Court to back up that rhetoric.  *Id*. at 3.  Their failure of proof should end any question of burden.  Google Opening Brief ("Br."), Dkt. No. 1, at 24.

Of course, if the Subpoenaed Parties really do have an "enormous" amount of responsive material to review, that does not mean that the burden of reviewing it is somehow "undue."  To the contrary, that would only confirm the extensive nature of the behind-the-scenes role that these parties played. Given that role, the cases that the Subpoenaed Parties cite regarding undue burden are inapposite, as they involve true non-parties, far removed from the

fray. In particular, in *Arista Records LLC v. Lime Group LLC* defendants — who were trying a damages case after their liability for copyright infringement had been determined — subpoenaed plaintiff's licensees based on speculation that these third parties might show plaintiff's "hypocrisy" in enforcing its intellectual property rights. 2011 U.S. Dist. LEXIS 20709, at *11-12 (S.D.N.Y. Mar. 1, 2011). Because these third parties were *plaintiff's* licensees, there was no possibility that they were involved in the defendants' misconduct. Here, by contrast, the Subpoenaed Parties were undeniably sponsoring AG Hood's unlawful investigation, and their lobbyists were working hand in glove with him throughout.[7]

### III. Google Is Not Seeking Privileged Materials, and the Subpoenaed Parties' Failure to Substantiate Their Privilege Assertions Amounts to a Waiver.

The Subpoenaed Parties claim that the Court need not address privilege issues now because they are "irrelevant and premature" even though they are "likely [to] assert privilege over at least some internal documents discussing or relating to political donations." Opp. at 24. That is gamesmanship. If the Subpoenaed Parties are withholding documents based on supposed privileges asserted months ago, their failure to substantiate them by now is a waiver.

The Subpoenaed Parties' privilege punt is based on *United States v. Philip Morris, Inc.*, 347 F.3d 951, 952-53 (D.C. Cir. 2003). But nothing in *Philip Morris* supports the view that a party can refuse to substantiate its privilege assertions when challenged, and thereby withhold unidentified documents indefinitely.[8] That approach would require that Google first litigate this

---

[7] The other "undue burden" cases cited by Subpoenaed Parties are even further afield. *See Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (quashing second set of subpoenas to third party that sought substantially the same information as first set); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51-52 (S.D.N.Y. 1996) (finding subpoena to defendant's investment banker "overbroad on its face" as it contained 22 broad requests such as "[a]ll documents submitted or given to you by [defendant]" whereas the litigation pertained to only one of many segments of defendant's business).

[8] In *Philip Morris*, one of the defendants (BATCo) produced many documents and withheld others on the basis of the attorney-client privilege, providing a log to substantiate its privilege assertions. *Id.* at 952-53. BATCo also served objections, including that it would not produce documents outside of its custody and control. Through a separate proceeding, the government learned of an undisputedly privileged memo that had been omitted from

9

motion to compel, and then bring a second challenge to the Subpoenaed Parties' yet-to-be-identified privilege claims.[9]  As the Subpoenaed Parties know, there simply is not time under the case schedule for seriatim motion practice. Their refusal to provide logs and substantiate their privilege claims until some unknown point in the future is the sort of "unjustified delay, inexcusable conduct, and bad faith" that *Philip Morris* held was inconsistent with the assertion of a privilege.  347 F. 3d at 954 (internal marks and citation omitted).  *Accord In re Chevron Corp.*, 749 F. Supp. 2d 170, 182-85 (S.D.N.Y. 2010) (decided after *Philip Morris*; confirming waiver for failure to substantiate privilege), *aff'd*, 409 Fed. Appx. 393 (2d Cir. 2010).  By failing to substantiate their privilege claims they have waived them.  *Id.*; *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) (privilege not established with "mere conclusory or ipse dixit assertions").

## CONCLUSION

For the reasons discussed above and in Google's Opening Brief, Google requests that the Court grant its motion to compel and order the Subpoenaed Parties to produce responsive documents.

---

BATCo's privilege log.  BATCo explained that the document had not been logged because BATCo believed the document was outside of its custody and control.  It then sought to amend its privilege log to include the newly-discovered document.  *Id*. at 953.  The government argued that it was too late.  *Id*.  The district court agreed with the government and found that BATCo waived privilege. On appeal, the D.C. Circuit remanded, explaining that, in such situations, courts should be reluctant to find waiver. Google agrees. But this case, involving a wholesale refusal to log any withheld documents or substantiate any privilege claims, is nothing like that one.

[9] Again, no privilege could apply here.  *See* Google Opening Br. at 15-23.  The First Amendment privilege protects anonymous speakers or those fearing governmental, economic or social reprisal if their speech or associational activities are revealed.  *Id.* at 19.  But the press has already shone a spotlight on the Subpoenaed Parties' plot.  *See generally* Wingfield and Lipton Article; Brandom Article.  And the Subpoenaed Parties face nothing remotely like the sort of reprisals that the First Amendment privilege was crafted to protect.  They are powerful companies who have enormous financial resources and control major media outlets.  Their lobbying and associational activities are at no risk of chill from Google's subpoena.  Further, those lobbying activities, including discussions about "political contributions," are not subject to the attorney-client privilege, regardless of whether lawyers were involved. Communications with a lawyer acting *as a lobbyist* are not privileged.  *See* Google Opening Br. at 22-23.

10

Dated:  June 22, 2015                    Respectfully submitted,

                                         WILSON SONSINI GOODRICH & ROSATI
                                         Professional Corporation

                                         By: *s/ David H. Kramer*
                                              David H. Kramer (admitted *pro hac vice*)
                                              Michael H. Rubin (*pro hac vice* forthcoming)
                                              WILSON SONSINI GOODRICH & ROSATI PC
                                              650 Page Mill Road
                                              Palo Alto, CA 94304
                                              Email: dkramer@wsgr.com
                                              Email: mrubin@wsgr.com
                                              Phone: (650) 496-9300
                                              Fax: (650) 493-6811

                                              Morris J. Fodeman
                                              1301 Avenue of the Americas, 40th Floor
                                              New York, NY 10019
                                              Email: mfodeman@wsgr.com
                                              Phone: (212) 999-5800
                                              Fax: (212) 999-5899

                                              *Attorneys for Petitioner*
                                              GOOGLE INC.