**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOOGLE INC., | ) CASE NO.: 1:15-mc-00150-P1 |
| | ) |
| Petitioner, | ) CASE IN OTHER COURT: |
| | ) No. 3:14-cv-00981-HTW-LRA (S.D. |
| v. | ) Miss.) |
| | ) |
| TWENTY-FIRST CENTURY FOX, INC., | ) **ECF CASE** |
| NBCUNIVERSAL MEDIA, INC., and | ) |
| VIACOM, INC., | ) |
| | ) |
| Respondents. | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF GOOGLE INC.'S RULE 45(f)**
**MOTION TO TRANSFER**

Morris J. Fodeman
WILSON SONSINI GOODRICH & ROSATI PC
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Email: mfodeman@wsgr.com
Phone: (212) 999-5800
Fax: (212) 999-5899

David H. Kramer (admitted *pro hac vice*)
Michael H. Rubin (*pro hac vice* pending)
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304
Email: dkramer@wsgr.com
Email: mrubin@wsgr.com
Phone: (650) 496-9300
Fax: (650) 493-6811

*Attorneys for Petitioner*
GOOGLE INC.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

RESPONSIVE BACKGROUND ............................................................................................. 2

ARGUMENT ........................................................................................................................... 3

I.      Google Has Shown that Exceptional Circumstances Exist to Support Transfer ............... 3

        a.      The Mississippi Court Has Already Made Relevance Determinations
                Bearing on Google's Motion to Compel ................................................................. 3

        b.      The Mississippi Court Has a Pending Motion to Compel Before it Raising
                Privilege Issues that Bear on the Motion to Compel Here ..................................... 7

        c.      Resolving Multiple Subpoenas in Different Jurisdictions Risks
                Inconsistent Rulings and Warrants Transfer .......................................................... 8

II.     Transfer Would Not Unduly Burden the NY Subpoenaed Parties ..................................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agincourt Gaming, LLC v. Zynga*, 2014 U.S. Dist. LEXIS 114348,
(D. Nev. Aug. 15, 2014) ...............................................................................................5, 8

*CMB Expert, LLC v. Atteberry*, 2014 U.S. Dist. LEXIS 72029
(N.D. Tex. May 27, 2014)........................................................................................................6

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 2014 U.S. Dist. LEXIS 140784,
(D.D.C. Oct. 3, 2014)...............................................................................................5, 9, 10

*Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405 (N.D. Ala.
2013) ............................................................................................................................6

*Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38 (D.D.C. 2014) .......................................................9

*XY, LLC v. Trans Ova Genetics, L.C.*, 2014 U.S. Dist. LEXIS 126258 (D.D.C.
Sept. 10, 2014) ............................................................................................................5, 8

## RULES

Fed. R. Civ. P. 45(f) Advisory Committee Note (2013)...........................................................1, 10

Rule 45 ............................................................................................................................1, 2, 10

## MISCELLANEOUS

Joe Mullin, "Hollywood v. Goliath: Inside the aggressive studio effort to bring
Google to heel," *Ars Technica* (December 19, 2014) ("Mullin Article"),
*available at* < http://arstechnica.com/tech-policy/2014/12/how-hollywood-
spurned-by-congress-pressures-states-to-attack-google/> ................................................2

Press Release, Mississippi Attorney General, Attorney General Hood Asks
Colleagues to Issue Subpoenas in Google Investigations (June 18, 2013)
("Press Release, June 18, 2013"), *available at*
<http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-18_AG-
Asks-Colleagues-to-Issue-Subpoenas-in-Google-Investigations.pdf>..............................6

Press Release, Mississippi Attorney General, Attorney General Hood Asks
Colleagues to Issue Subpoenas in Google Investigations (June 18, 2013)
("Press Release, June 18, 2013"), *available at*
<http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-18_AG-
Asks-Colleagues-to-Issue-Subpoenas-in-Google-Investigations.pdf>..............................6

**<u>INTRODUCTION</u>**

In opposing Google's motion to transfer, the NY Subpoenaed Parties cast themselves as mere bystanders to the underlying litigation and the events leading to it. They claim that Google has "drag[ged] them into Google's lawsuit against Mississippi Attorney General Jim Hood." NY Subpoenaed Parties' Opp. to Mot. to Transfer ("Opp."), Dkt. No. 18, at 1. Their rhetoric does not match reality. The NY Subpoenaed Parties sought out Mississippi when they co-opted the state's Attorney General for their anti-Google campaign. Documents withheld by their lobbyists, the Motion Picture Association of America ("MPAA"), until just last week reveal a stunning level of involvement in Mississippi's affairs. The NY Subpoenaed Parties and the MPAA repeatedly visited the state to meet with AG Hood; they hosted a campaign fundraiser for him; and they controlled the pen used to draft his illicit demands and threats to Google. It is Google that was dragged into a Mississippi lawsuit by the NY Subpoenaed Parties and not the other way around.

But it is not only the NY Subpoenaed Parties' starring role in the underlying events that warrants transfer of Google's Motion to Compel to Judge Wingate in Mississippi; all of the Rule 45 factors support it as well. Judge Wingate has already issued rulings that bear on the pending motion, rulings the NY Subpoenaed Parties mischaracterize or ignore. He also has a motion under submission that may resolve the propriety of the NY Subpoenaed Parties' withholding of their internal documents discussing interactions with AG Hood. Consistent with Rule 45(f), it makes sense to litigate the meaning of Judge Wingate's decisions and the discoverability of the requested documents in his court rather than multiple courts given the risk of inconsistent outcomes and potential conflict with the tight discovery schedule in the case.

The NY Subpoenaed Parties have made clear that they have no problem acting in

1

Mississippi when it suits their ends.  After their years of direct involvement there, litigating

objections to a single subpoena in the state could not possibly be an undue burden.  Because

Google's Motion to Compel presents the exceptional circumstances that Rule 45 envisions,

Google requests that it be transferred to Judge Wingate for further proceedings.

## RESPONSIVE BACKGROUND

According to the NY Subpoenaed Parties, they are strangers to Mississippi.  But

documents produced last week by their lobbyists at the MPAA (just as briefing was closing on

the motion to compel) tell a very different story.[1]  The NY Subpoenaed Parties and their

representatives made repeated visits to AG Hood's office in Mississippi to guide his anti-Google

work.[2]  Even when they weren't physically at AG Hood's office, they were hosting a fundraising

dinner for him in New Orleans.  *See, e.g.*, Second Supp. Rubin Decl. Exh. 4, MPAA00001576

(invitation to fundraising dinner for AG Hood hosted by *inter alia* Rick Smotkin (NBC) and the

MPAA).  But those interactions only scratch the surface, as the documents reveal remarkably

cozy communications between the NY Subpoenaed Parties, their lobbyists, and AG Hood.

Second Supp. Rubin Decl. Exh. 1, JB_0000331 (discussing dinner between AG Hood and Fox's

Bill Guidera, the MPAA's Brian Cohen, and their lobbyist Tom Perrelli at Jenner & Block LLP

("Jenner")); Mullin Article (quoting an email where the NY Subpoenaed Parties' lobbyist Tom

---

[1] This motion cites to three different declarations submitted in support of Google's Motion to Compel and Motion to Transfer: Declaration of Michael H. Rubin ISO Google's Motion to Compel, Dkt. No. 1-2, 4-2, 5-2, 6, and 7 ("Opening Rubin Decl."); Supplemental Declaration of Michael H. Rubin ISO Google's Mot. to Compel, Dkt. No. 24-1 ("Supp. Rubin Decl."); and the Second Supplemental Declaration of Michael H. Rubin ISO Google's Mot. to Transfer ("Second Supp. Rubin Decl.").

[2] Second Supp. Rubin Decl. Exh. 5, MPAA00002409 (referencing visit by Scott Martin of Paramount Pictures (Viacom) to meet AG Hood in Jackson, MS); Second Supp. Rubin Decl. Exh. 6, MPAA00000509-16 (indicating that David Green (NBC) and Rick Smotkin (Comcast), would be attending a meeting in Jackson MS, with AG Hood's office along with MPAA representatives);*see also* Second Supp. Rubin Decl. Exh. 7, MPAA00000075 (Brian Cohen of the MPAA discussing his first trip to Mississippi to meet AG Hood in April 2012); Second Supp. Rubin Decl. Exh. 1, JB_00000330 (Email from Brian Cohen (MPAA) mentioning how nice it was to visit Jackson, MS); Second Supp. Rubin Decl. Exh. 8, MPAA 00000481-87 (Brian Cohen (MPAA) sets up a meeting in Mississippi with AG Hood and his staffers that includes Vans Stevenson (MPAA and "the guy from the Digital Citizens Alliance.").

Perrelli reports back to them that he "spent time with Hood" to get him focused on "key issues and the asks" for Google); Second Supp. Rubin Decl. Exhs. 9 & 10, MPAA00001680-84 & MPAA00001536-38 (MPAA's Brian Cohen greeting one of AG Hood's staffers with "Hello my favorite" and offering to send her pictures of his vacation in New Zealand). This pattern of sustained, close and in-person contact is not the mark of parties that merely "previously communicated with AG Hood." Opp. at 16.

The NY Subpoenaed Parties and their lobbyists acted in concert to animate AG Hood with respect to Google. That coordination continues to this day—their counsel for this matter, Jenner, also represents the MPAA in the District for the District of Columbia, where they assert relevance, burden and privilege arguments that are virtually identical to those that the NY Subpoenaed Parties have advanced here. *See* NY Subpoenaed Parties' Opp. to Mot. to Compel, Dkt. No. 16, at 16, 18, 19; MPAA Opp. to Mot. to Compel, 15-mc-00707-JEB-DAR (D.D.C.), Dkt. No 17, at 13, 15, 16; Opening Rubin Declaration ¶¶ 11, 14-19 and accompanying exhibits.

## ARGUMENT

### I. Google Has Shown that Exceptional Circumstances Exist to Support Transfer

#### a. The Mississippi Court Has Already Made Relevance Determinations Bearing on Google's Motion to Compel

The NY Subpoenaed Parties' principal argument against the transfer to Mississippi of Google's motion to compel is that nothing that Judge Wingate has said or will say in the underlying proceeding bears on the issues that this motion to compel presents. But they refute their own argument when they invoke Judge Wingate twice in the introduction to the brief opposing the motion to compel, claiming that he deemed the discovery Google seeks irrelevant. That is false, and also beside the point. The NY Subpoenaed Parties plainly recognize that Judge Wingate's views on the issue of relevance matter and are working hard to spin them before this

Court.  Judge Wingate himself, however, is in a far better position than the NY Subpoenaed Parties or anyone else to address that issue.

The NY Subpoenaed Parties claim that Google thinks the "Mississippi Litigation involves a legal question," not a factual one.  Opp. at 12 (internal quotations omitted).  That too is false.  It badly twists a statement Google made in objecting to AG Hood's demand in the Mississippi proceeding *for documents regarding Google's behavior*. MS Dkt. 129 at 3, 6, 13.[3] Those documents are, in fact, irrelevant to the underlying case which challenges *AG's Hood's* conduct.  And as Judge Wingate already made clear in his Order enjoining AG Hood, *the question of AG Hood's motivation remains of critical relevance*.  Rubin Decl. Exh. 53 at 19 (PI Order) ("[I]t is well-settled that the Attorney General may not retaliate against Google for exercising its right to freedom of speech by prosecuting, threatening prosecution, and conducting bad-faith investigations against Google. ... Google has submitted competent evidence showing that the Attorney General issued the subpoena in retaliation for Google's likely protected speech, namely its publication of content created by third-parties.").  It is on that quintessential fact question that the NY Subpoenaed Parties' documents directly bear.  Judge Wingate reinforced that point when he ordered AG Hood to produce a variety of documents that he exchanged with lobbyists for the NY Subpoenaed Parties at the MPAA.  Rubin Decl. Exh. 14 (Order on *Ore Tenus* Discovery) (ordering production of various communications between AG Hood and the MPAA, as well as drafts of the CID and position papers that the MPAA provided to AG Hood).

However one interprets Judge Wingate's prior rulings, Google and the NY Subpoenaed Parties agree that those rulings bear on Google's motion to compel. Judge Wingate is best

---

[3] All citations herein to "MS Dkt." refer to the docket in the underlying action pending before Judge Wingate.

situated to explain and apply those rulings.[4]  That, in and of itself, warrants transfer of the motions to Mississippi.  *See Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 2014 U.S. Dist. LEXIS 140784, at *12 (D.D.C. Oct. 3, 2014) (Having ruled on similar issues, "[t]he issuing court is ... in a far better position than [the compliance court] to evaluate the relevance of, and necessity for, the documents demanded."); *Agincourt Gaming, LLC v. Zynga*, 2014 U.S. Dist. LEXIS 114348, at *18 (D. Nev. Aug. 15, 2014) (issuing court's views on relevance weigh especially in favor of transfer where it has already rendered decisions on the merits of the case that bear on relevance assessment ); *XY, LLC v. Trans Ova Genetics, L.C.*, 2014 U.S. Dist. LEXIS 126258, at *5-6 (D.D.C. Sept. 10, 2014) ("[T]he relevance argument advanced [by the non-party] emphasizes the need for the court where the underlying matter lies to decide the matter.").[5]

The NY Subpoenaed Parties contend that the overlap in their relevance position with issues already addressed in Mississippi does not justify transfer.  But their authority is readily distinguished.  One court denied transfer of a motion where "some of the issues that will arise in resolving the motions to quash will also arise in the underlying litigation."  Opp. at 9 (quoting

---

[4] The same is true with respect to the out-of-context statement that the NY Subpoenaed Parties pull from the transcript on the preliminary injunction motion before Judge Wingate.  *See* Opp. at 3.  They claim Judge Wingate did not see the relevance of the NY Subpoenaed Parties' involvement in AG Hood's investigation.  But the offhand comment they cite came during Judge Wingate's questioning of AG Hood about that very involvement.  MS Dkt. 83 at 73.  Moreover, the comment came in the preliminary injunction context where Google had already offered unrebutted evidence of AG Hood's bad faith making additional evidence of AG Hood's illicit motivation unnecessary for resolving the motion before him.  In any event Judge Wingate's views again are best addressed by Judge Wingate and not by the NY Subpoenaed Parties.

[5] The NY Subpoenaed Parties half-heartedly attempt to distinguish Google's cases.  Opp. at 10-11.  They claim the action has not been pending in Mississippi long enough for Judge Wingate to have superior familiarity with the facts.  But the Mississippi Court has been extremely active since the case was filed eight months ago, having already conducted five hearings, and issuing five substantive orders, including a detailed opinion on Google's motion for preliminary injunction and AG Hood's motion to dismiss, and three discovery rulings.  *Cf. Judicial Watch*, 2014 U.S. Dist. LEXIS 140784, at *12 (relying on the court's familiarity with the issues when transferring and highlighting that a similar privilege objection had already been ruled on in the issuing court).  The NY Subpoenaed Parties argue that *XY, LLC* is inapplicable because the third parties there had a "close connection" to a party in the underlying action.  Opp. at 11 (discussing *XY, LLC v. Trans Ova Genetics, L.C.*, 2014 U.S. Dist. LEXIS 126258 (D.D.C. Sept. 10, 2014)).  But they are even closer to a party in the underlying action here, having directly participated in AG Hood's unlawful conduct.  Finally, the NY Subpoenaed Parties try to distinguish *Agincourt* on the grounds that the issuing court there had multiple actions involving similar issues.  Opp. at 11 (discussing *Agincourt*, 2014 U.S. Dist. LEXIS 114348).  But the number of actions just went to show the complexity of the case, and this case is no less complex due to the tangled and multi-jurisdictional web of lobbyists who fed AG Hood's anti-Google campaign.

*Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2013)).  But the *Woods* case dealt with a situation where the overlapping relevance question had not yet come up in the underlying case, and merely could in the future—in fact, the court explicitly distinguished cases where "the issuing court has **already** ruled on the issues." *Id.* at 408 (emphasis in original). That is the case here.  In *CMB Expert, LLC v. Atteberry*, the issuing court had been presented with a motion to stay the case and as a result, it was not clear that it possessed significantly greater knowledge of the facts.  2014 U.S. Dist. LEXIS 72029, at *3-4 (N.D. Tex. May 27, 2014).  Although the court ultimately denied transfer, the driving factor in the court's decision appears to have been that only one other subpoena was subject to motion practice, and the parties had agreed to consolidate that motion before the same court. *Id.* at *4. Thus, unlike here, there was no potential for inconsistent rulings by different courts.

The NY Subpoenaed Parties also contend that ordering transfer so that the Mississippi court can rule on their relevance objections would "open the door to … harassment of non-parties."  Opp. at 10.  But they predicate that argument on the fiction that they have "only a tangential relationship to the litigation." *Id*.  In reality, the NY Subpoenaed Parties were the architects of AG Hood's investigation into Google and worked hand-in-glove with him in Mississippi, right up until he "slapped" Google with the CID that their lobbyists drafted, in retaliation for Google's refusal to censor protected speech.  *See* Press Release, June 6, 2013 (AG Hood announcing: "Google is being asked to adequately address the attorneys general concerns or prepare to be slapped with subpoena's [sic] forcing the company to produce documents and answer questions."); Press Release June 18, 2013 ("Due to Google's refusal to ... work with attorneys general, [AG Hood said] he would subpoena Google's records and emails....").[6]  This

---

[6] These press releases are available at <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-6_AGAsking-

litigation is about the unlawful investigation that the NY Subpoenaed Parties manufactured.  And these motions are precisely the type for which transfer is warranted.[7]

> **b.    The Mississippi Court Has a Pending Motion to Compel Before it Raising Privilege Issues that Bear on the Motion to Compel Here.**

Google has a motion to compel against AG Hood under submission before Judge Wingate in Mississippi.  In that motion, Google seeks production of lobbying documents over which AG Hood has asserted some sort of privilege.  Google argues there that AG Hood has "no valid basis to assert privilege" over those documents since "[m]ost of the documents in question were prepared by third parties lobbying the Attorney General to take action against Google." *Compare* MS Dkt. 100 at 1 (Google's Motion to Compel against AG Hood) *with* Google's Mem. ISO Mot. to Compel, Dkt No. 2, at 16-18.  Those "third parties lobbying the Attorney General" include the NY Subpoenaed Parties.

A ruling by the Mississippi Court on Google's pending motion could certainly bear on issues joined in Google's motions here.  Judge Wingate could conclude, for example, that the materials AG Hood is withholding are not his work product, but rather materials the NY Subpoenaed Parties' lobbyists sent to AG Hood as part of their anti-Google effort. That, in turn, would cast severe doubt on the NY Subpoenaed Parties' attempt to cloak their internal documents in the attorney client privilege because the lawyers they hired were clearly acting as

---

Google-to-Address-Alleged-Violations-of-Intellectual-PropertyRights.pdf>; and <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-18_AG-Asks-Colleagues-to-Issue-Subpoenas-in-Google-Investigations.pdf>.  The MPAA plainly drafted at least the latter release in which AG Hood's retaliatory intent is revealed. *See* Second Supp. Rubin Decl. Exh. 11, MPAA00001115 (Hood staffer responding to draft press release from Brian Cohen (MPAA) on June 18, 2013 saying:  "Looks great! I made some minor changes in order to follow our usual formatting style.").

[7] Judge Wingate's order regarding the commencement of discovery is likewise a contested issue of potential consequence.  The NY Subpoenaed Parties have argued that Google's March 12 subpoenas were served "before discovery began."  Google has always maintained that discovery opened on March 2, as confirmed in Judge Wingate's April 10 Order.  Opening Rubin Decl. ¶ 5, Exh. 14 ("Discovery commenced for the parties and third parties on March 2, 2015.").  Given that, Google's subpoenas were proper and the NY Subpoenaed Parties' "supplemental objections" on April 24 were untimely and waived. *See* Opening Rubin Decl. Exhs. 1, 2, 6, 15, 16, 18 (subpoenas and letters giving extension to April 17).  To the extent there is disagreement on that point, Judge Wingate, again, is in the best position to resolve it.

lobbyists rather than providing legal advice.  Google's Memo ISO Mot. to Compel at 17-18.  The

NY Subpoenaed Parties' argument that "[t]here is no evidentiary or analytical overlap" between

these motions and the one pending in Mississippi is simply not correct.[8]

### c.   Resolving Multiple Subpoenas in Different Jurisdictions Risks Inconsistent Rulings and Warrants Transfer.

Google's subpoenas here, in Washington D.C., and elsewhere all seek similar

information related to AG Hood's investigation of Google.  To date, Google has filed Motions to

Compel in this Court and the District for the District of Columbia.  The arguments that the NY

Subpoenaed Parties and the parties in Washington advance in opposition to those motions—and

in the meet and confer process leading up to them—are virtually identical.  They each assert

similar relevance, burden, and privilege objections, often using the same exact words.  They

mischaracterize Judge Wingate's prior Orders in the same way, and they stake out the same

dubious positions including, for example, the notion that their internal communications about

meetings with AG Hood are categorically irrelevant to AG Hood's state of mind.  Asking

multiple courts to address these issues risks inconsistent outcomes on matters central to the case,

a possibility meriting transfer of the motions to a single court.  Google's Mem ISO Mot. to

Transfer at 10-11; *Agincourt*, 2014 U.S. Dist. LEXIS 114348, at *19 ("That risk [of inconsistent

rulings] is heightened in a case like this one where the issued subpoenas require compliance from

different non-parties in different districts.").

The NY Subpoenaed Parties do not grapple with the risk of inconsistent outcomes or the

relevant authorities in their opposition briefs.  Instead, they protest Google's subpoenas in the

---

[8] The NY Subpoenaed Parties argument that "no privilege issues are currently before *this* Court" is also wrong. Opp. at 8.  They asserted a number of privileges throughout the meet-and-confer process—their refusal to substantiate those privileges does not mean they are beyond the Court's purview.  Opening Rubin Decl. ¶¶ 4, 9, 11, 15, Exh. 12, 31, 39. Google has repeatedly shown why those privileges are both waived and do not apply.  Google's Mem. ISO Mot. to Compel at 15-23; Google's Reply ISO Mot. to Compel at 9-10.

first place (ignoring what the subpoenas have already uncovered), and claim that "[t]he mere issuance of subpoenas followed by motions to compel in multiple districts is not, and cannot, be sufficient to justify a transfer to the district where the underlying action is pending."  Opp. at 12. But their say-so is not law.  Courts regularly hold that the pendency of discovery motions implicating the same issues in multiple jurisdictions *is* sufficient to warrant transfer.  Google's Memo ISO Mot. to Transfer at 9 (quoting the *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) ("[The] potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes")).

The logic supporting transfer is even stronger where, as here, the multiple subpoenas are in service of fact development for a case on a tight schedule with a looming discovery deadline. Transfer of the Motion helps to ensure discovery can be completed within the discovery schedule Judge Wingate has set.[9]

*****

The argument for transfer is straightforward: the Mississippi Court has already ruled on questions of relevance that directly bear on the motions here; there is also a pending motion in Mississippi that raises similar issues to these; there is a live dispute over the interpretation of the Mississippi Court's own orders; and there are overlapping discovery motions in multiple jurisdictions creating a risk of inconsistent outcomes and impact on the management of the underlying case.  Together, these exceptional circumstances make this a model case for transfer.

## II.  Transfer Would Not Unduly Burden the NY Subpoenaed Parties

Given their role in the underlying events in Mississippi, the NY Subpoenaed Parties' contention that they would be unduly burdened by having to litigate a single motion to compel in

---

[9] Google's Mem. in Supp. of Unopposed Mot. to Extend Discovery Deadline, MS Dkt. 131 (explaining tight discovery window).  AG Hood represented that his office was unable to timely produce documents that Google requested, because a member of his staff was ill.  Accordingly, Judge Wingate recently extended the discovery period by 30 days.  MS Dkt. 133 (discovery now closing in the underlying case on August 10, 2015).

Mississippi is not credible.  The NY Subpoenaed Parties exerted substantial influence to foment an investigation of Google that Judge Wingate has now deemed likely unlawful.  They did that in part by repeatedly sending representatives on the same trip to Mississippi they are here claiming is too burdensome.  Opp. at 15.  They are represented by Jenner, a national law firm that practices all around the country and whose lawyers, acting as lobbyists repeatedly traveled across the country to meet with AG Hood.   Their claim to burden is simply implausible.[10]

Even if the NY Subpoenaed Parties established some theoretical burden, Rule 45 addresses it.  The Advisory Committee Notes to the Rule "encourage[] [courts] to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties."  Fed. R. Civ. P. 45(f) Advisory Committee Note (2013).  In other words, the NY Subpoenaed Parties would be welcome to appear before Judge Wingate by phone—as the parties have on multiple occasions.  *See* MS Dkt. (entries on April 6, 2015, April 15, 2015, and May 19, 2015 showing telephone conferences); Google's Mem. ISO Mot. to Transfer at 11 n.9.

## CONCLUSION

The NY Subpoenaed Parties sought out a Mississippi public official and spent years lobbying him in Mississippi to take the actions giving rise this case.  Given that, it is audacious for them to now object to litigating these motions in Mississippi.  The exceptional circumstances here favor transfer and far outweigh any minimal burden on the NY Subpoenaed Parties.  For those reasons, Google requests that the Court transfer the Motion to Compel to the Southern District of Mississippi at the earliest possible date for further proceedings.

---

[10] The NY Subpoenaed Parties claim that Google highlighted their "sophistication" as an "exceptional circumstance" warranting transfer.  Opp. at 14.  Google did not do so.  Rather, it correctly pointed out that *when assessing the burden of transfer for a nonparty*, courts routinely look to whether that "non-party is a national entity represented by sophisticated counsel."  Google's Mem. ISO Mot. to Transfer at 11 (citing *Judicial Watch, Inc*., 2014 U.S. Dist. LEXIS 140784, at *11).  Even the NY Subpoenaed Parties reluctantly acknowledge, albeit in a footnote, that the sophistication of the parties frequently factors into the court's decision on burden.  Opp. at 15 n.11

Dated:  June 29, 2015

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *s/ David H. Kramer*
      David H. Kramer (admitted *pro hac vice*)
      Michael H. Rubin (*pro hac vice* pending)
      WILSON SONSINI GOODRICH & ROSATI PC
      650 Page Mill Road
      Palo Alto, CA 94304
      Email: dkramer@wsgr.com
      Email: mrubin@wsgr.com
      Phone: (650) 496-9300
      Fax: (650) 493-6811

      Morris J. Fodeman
      1301 Avenue of the Americas, 40th Floor
      New York, NY 10019
      Email: mfodeman@wsgr.com
      Phone: (212) 999-5800
      Fax: (212) 999-5899

      *Attorneys for Petitioner*
      GOOGLE INC.